WEST HARTFORD BOARD OF EDUCATION *v.*
CONNECTICUT STATE BOARD OF LABOR
RELATIONS ET AL.
(10655)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and PICKETT, Js.

Argued December 2, 1982—decision released May 31, 1983

*Russell L. Post, Jr.,* with whom, on the brief, was *Jewel A. Gutman,* for the appellant (plaintiff).

*J. Larry Foy,* general counsel, for the appellee (named defendant).

*William J. Dolan,* with whom, on the brief, was *Ronald Cordilico,* for the appellee (defendant West Hartford Education Association).

PICKETT, J. This is an appeal by the West Hartford Board of Education (school board) from a Superior Court judgment dismissing the school board's appeal from a decision and orders of the defendant Connecticut State Board of Labor Relations (labor board). The labor board concluded that the school board did not bargain in good faith thereby violating § 10-153e (d) of the Teacher Negotiation Act (act);[1] General Statutes §§ 10-153a through 10-153n; when it failed to provide information requested by the defendant West Hartford Education Association (WHEA), (the exclusive statutory bargaining representative for the bargaining unit comprised of certified teachers employed by the school board).

---

[1] The legislature gave teachers the right to bargain collectively and imposed upon school boards the duty to negotiate with the representatives of the teachers through the Teacher Negotiation Act. General Statutes § 10-153a.

Elementary school teachers in the West Hartford school system (system) are eligible for the position of coordinating teacher. The coordinator position ordinarily entails curriculum development and does not interfere with the coordinator's teaching assignment. The West Hartford school administration (administration), (composed of the school board's director of instruction, associate superintendent and superintendent), annually selects the coordinating teachers, who receive additional compensation for the appointment. The system had twenty-seven coordinating teachers during the 1977–78 school year. Since student enrollment had decreased, the school board decided to reduce the number to seventeen for the 1978-79 school year. Twenty-two teachers, all of whom had been coordinators during 1977–78, sought reappointment that year.

Dr. James Moore, the school board's director of personnel services, gathered and appraised information on each applicant to assist in selecting the seventeen coordinators. The evaluative data included (1) performance ratings prepared by each applicant's principal; (2) performance ratings prepared by members of the school board's central office staff; (3) results from the application of a weighing scale to those performance ratings (intended to reflect the degree of familiarity with the applicant's performance by the individual submitting the rating); (4) information obtained from interviews with the applicants; and (5) the annual evaluations of the applicants. Moore reported his evaluation of the prospective coordinators to the administration which thereafter, in June, 1978, appointed the successful applicants. A few days later, Moore destroyed the information compiled during the appraisal process.

On June 30, 1978, Victor Terek, president of the WHEA, filed a grievance on behalf of the five unsuc-

cessful applicants. The grievance charged that the administration did not adhere to a contractual clause in the collective bargaining agreement (contract) between the WHEA and the school board. Article 18.6 of the contract[2] established that length of service and relative performance are the prime factors to be considered equally in making staff reductions. The grievants claimed that the administration had considered performance, but ignored seniority in selecting the 1978-79 coordinators. A grievance meeting was held on August 1, 1978; but, the school board denied the grievance on the grounds that article 18.6 applied only to teachers laid off from their regular duties and that decisions concerning annual assignments of additional duty did not entail staff reductions.

The WHEA believed that it needed information about the factors employed in the coordinator selection process in order to evaluate and process the grievance properly. It sought that data, moreover, so that a determination could be made whether to bring additional grievances under the contract's article 6.1 (a) provision requiring that the contract be fairly administered. The WHEA requested the information at the grievance meeting and again by memo. The school board responded to the memo stating that the data which had been the basis for the reappointment decisions had been destroyed pursuant to a teacher-approved policy.[3] It did forward (1) the blank rating form employed by the principals and central office staff; (2) the system of

---

[2] Article 18.6 of the contract reads as follows: *"Length of service in the West Hartford school system and relative performance shall be the prime factors to be considered equally in making staff reductions.* If such reductions are necessary, the retention of tenured teachers shall receive priority consideration." (Emphasis added.)

[3] The union had clearly indicated in prior years that the teachers wished that rating forms such as the ones at issue here were not to be retained permanently.

weighing; and (3) data on age distribution of elementary school coordinators. The school board also agreed that the permanent annual teacher evaluations of the applicants were obtainable. The WHEA, nonetheless, still sought the performance ratings completed by the principals and the school board's central office staff specifically for Moore's evaluation system. To that end, it filed a complaint with the labor board[4] on October 5, 1978, alleging that refusal to provide such information was a practice prohibited by § 10-153e (d) of the act.[5]

The labor board, charged by statute with the duty to determine whether a local board of education has bargained in good faith with the teachers' bargaining representative, issued its decision on November 6, 1979, finding that the school board had violated the act. It declined to consider the school board's contention that the WHEA grievance was not meritorious on the ground that the contract's grievance-arbitration procedure was the method to test such an assertion. The controlling issue in the labor board's decision was

[4] The grievance is still pending. Article 6 of the contract contains a grievance-arbitration procedure whereby any dispute over the contract's interpretation is resolved through arbitration. The WHEA decided to refrain from proceeding to arbitration with this grievance until it obtained a ruling on its right to the performance ratings.

[5] Section 10-153e (d) is set forth fully below:

"As used in this section, sections 10-153a to 10-153c, inclusive, and section 10-153g, 'to negotiate in good faith' is the performance of the mutual obligation of the board of education or its representatives or agents and the organization designated or elected as the exclusive representative for the appropriate unit to meet at reasonable times, including meetings appropriately related to the budget-making process, and to participate actively so as to indicate a present intention to reach agreement with respect to salaries and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation shall not compel either party to agree to a proposal or require the making of a concession."

whether the information sought by the WHEA was relevant to its grievance. The labor board believed that in order to determine whether the administration considered performance and seniority equally the WHEA must discover the emphasis placed on performance. Since the ratings sought in the complaint would indicate the consideration given performance, the labor board found them to be relevant to the contractual issue raised in the grievance. It further found that the performance data were therefore necessary so that the WHEA could perform its duty imposed by the act to represent its bargaining unit members intelligently. In light of those findings, the labor board concluded that the school board's statutory duty to bargain in good faith required it to furnish the information. Accordingly, it ordered the school board (1) to provide the requested information in the best possible manner (including recollections by those familiar with the contents of the destroyed documents); and (2) to cease and desist in the future from destroying documents or other evidence related to decisions subject to grievance under the contract (a) during the time within which such a grievance may be filed and/or (b) during the pendency of the grievance.

The school board filed an appeal in the Superior Court pursuant to § 10-153e (g) of the act seeking to vacate the labor board's orders. The trial court dismissed the appeal and upheld the labor board's decision in its entirety. From that judgment the school board has appealed assigning three errors in the court's conclusion. The school board initially contends that the court erred in upholding the labor board's discovery order because it required disclosure of information irrelevant to the WHEA's grievance. Even assuming arguendo that the requested performance ratings were relevant, the school board claims a second error in the court's

failure to recognize that individual and governmental rights to privacy prevail here over the union's interest in the ratings. Its final claim is that the orders, if sustained, constitute an unwarranted burden on the school board to preserve and disclose all predecisional material, no matter how remote, ever compiled in a selection process.

The act is essentially patterned on the National Labor Relations Act so that federal judicial interpretations of the federal act are of great assistance and persuasive force in the interpretations of it. *West Hartford Education Assn.* v. *DeCourcy, Inc.* 162 Conn. 566, 578–79, 295 A.2d 526 (1972). Since the act is a labor relations statute, it is a remedial enactment and as such should be liberally construed to accomplish its objectives. *Connecticut State Board of Labor Relations* v. *Board of Education,* 177 Conn. 68, 74, 411 A.2d 28 (1979). "In this regard, it is also well established that 'courts should accord great deference to the construction given the statute by the agency charged with its enforcement.' " Id., quoting *Anderson* v. *Ludgin,* 175 Conn. 545, 555, 400 A.2d 712 (1978). Indeed, courts have traditionally granted labor boards a very large degree of discretion when making bargaining unit determinations. *Connecticut State Board of Labor Relations* v. *Board of Education,* supra, 74; *Success Village Apartments, Inc.* v. *Local 376,* 175 Conn. 165, 397 A.2d 85 (1978).

The school board-employer has the statutory duty to bargain in good faith with the certified representative of the teachers. General Statutes §§ 10-153a, 10-153e (d). This duty requires an employer to provide relevant information that is needed by the representative for the proper performance of his duties. *Detroit Edison Co.* v. *NLRB,* 440 U.S. 301, 303, 99 S. Ct. 1123, 59 L. Ed. 2d 333 (1979); *NLRB* v. *Acme Industrial Co.,* 385 U.S. 432, 435–36, 87 S. Ct. 565, 17 L. Ed. 2d 495 (1967).

That obligation extends beyond the period of contractual negotiations to the union's need for information while administering and policing the contract. *NLRB v. Acme Industrial Co.,* supra, 436; *Western Massachusetts Electric Co.* v. *NLRB,* 589 F.2d 42, 46 (1st Cir. 1978). Whether information is relevant to the representative's duties during this time period depends upon the factual circumstances of each case. *NLRB* v. *Truitt Manufacturing Co.,* 351 U.S. 149, 153–54, 76 S. Ct. 753, 100 L. Ed. 1027 (1956).

The school board asserts that the requested ratings are irrelevant because (1) the grievance is without merit in that it is based on article 18.6 of the contract even though no staff reductions have occurred; (2) performance data is unrelated to a claim charging failure to consider seniority; and (3) even if the ratings would have been relevant to a grievance challenging the fairness of the administration's decision under article 6.1 (a) of the contract, no such charge was timely filed.

The determination of whether information is relevant is not a decision on the merits of the contractual claim stated in the grievance. *NLRB* v. *Acme Industrial Co.,* supra, 437. It is analogous to a discovery examination where the matters in dispute between the parties are not as well determined as at trial and where courts therefore follow a more liberal relevancy standard. Id., 437 n.6. An employer, then, must furnish information to the union even when it appears that the grievance filed is without merit provided it is probably relevant to the grievance and would be of use to the union in fulfilling its statutory duties. Id., 437–38. Deciding whether there is a probability that the desired information is relevant is a function best performed by the labor board. "[G]reat weight should be given the Board's determination on [the] issue [of relevancy] as the Board has access to all the evidence, the determina-

tion is within its particular expertise, and the question there is one of fact." (Citations omitted.) *San Diego Newspaper Guild* v. *NLRB,* 548 F.2d 863, 869 (9th Cir. 1977). Since the labor board's conclusion on relevancy is a finding of fact,[6] it is conclusive if supported by substantial evidence. General Statutes § 10-153e (g) (2). " '[The] so-called substantial evidence rule is similar to the "sufficiency of evidence" standard applied in judicial review . . . if it affords "a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." ' " (Citations omitted.) *Madow* v. *Muzio,* 176 Conn. 374, 381, 407 A.2d 997 (1978), quoting *Lawrence* v. *Kozlowski,* 171 Conn. 705, 713, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977).

The labor board held that there is a probability that the performance ratings are relevant to the WHEA grievance. Although the grievance charges that seniority was not justly considered, inherent in that claim is an additional allegation that relative performance was given exaggerated importance or that other factors impermissibly influenced the school board's decision. The WHEA has data on coordinator age distribution; but they only become meaningful to its grievance when juxtaposed with the performance ratings. The labor board's conclusion, therefore, is reasonable and is supported by substantial evidence in the record. There is no error in its finding that the ratings are relevant.

---

[6] There are cases to the contrary holding such a determination to be a mixed question of law and fact particularly within the scope of the labor board's expertise. Cf. *International Union Auto Workers* v. *NLRB,* 455 F.2d 1357, 1364-65 (D.C. App. 1971); *Fafnir Bearing Co.* v. *NLRB,* 362 F.2d 716, 721 (2d Cir. 1966).

In view of our decision on the issue of relevancy and the WHEA grievance, there is no need to address whether the ratings would be relevant to a potential grievance under article 6.1 (a) of the contract.

Although a union has the right to relevant information, that right can be subject to countervailing privacy interests. *Detroit Edison Co.* v. *NLRB, supra,* 318–19. *Detroit Edison* decided that the employer's duty to provide relevant information does not extend to validated psychological aptitude tests or to the scores of individuals taking such tests. It concluded that serious considerations of privacy outweighed the union's need for the information and justified conditioning the disclosure of the test scores on the examinees' consent.[7] Id., 319. "The sensitivity of any human being to disclosure of information that may be taken to bear on his or her basic competence is sufficiently well known to be an appropriate subject of judicial notice." Id., 318. Traditional performance evaluations are distinguishable from psychological aptitude tests in that they measure current knowledge and skills rather than basic competence. If the ratings at issue here are so confined, we find no sound justification to extend the *Detroit Edison* holding to them. We are not privy to the nature of those ratings, however, because they were never made part of the record. Indeed, *Detroit Edison* was decided after the labor board's decision in this case so the applicants' privacy interests were never addressed there. The principals and central office staff may have included information bearing upon the basic competence of the applicants for psychological factors. Accordingly, the labor board erred because its order was not limited to exclude information containing psychological factors from the ratings.

[7] All of the examinees in *Detroit Edison Co.* v. *NLRB,* 440 U.S. 301, 303, 99 S. Ct. 1123, 59 L. Ed. 2d 333 (1979), were grievants. The court, therefore, viewed the requirement as a minimal burden on the union.

The school board's claim that the performance evaluations are protected from disclosure by the state Freedom of Information Act; General Statutes § 1-19 (b); is without merit. It urges that the evaluations are either a public agency's preliminary drafts or notes or part of a public employee's personnel file and therefore are not subject to inspection pursuant to § 1-19 (b) (1) and (2)[8] of that statute. Section 1-19b (b), however, rebuts the plaintiff's argument: "[n]othing in Sections 1-15, 1-18a, 1-19 to 1-19b, inclusive and 1-21 to 1-21k, inclusive, shall be deemed . . . to affect the rights of litigants, including parties to administrative proceedings, under laws of discovery of this State."

There is error in part, the judgment is set aside, and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.

---

[8] Section 1-19 (b) (1) and (2) states: "Nothing in sections 1-15, 1-18a, 1-19 to 1-19b, inclusive, and 1-21 to 1-21k, inclusive, shall be construed to require disclosure of (1) preliminary drafts or notes provided the public agency has determined that the public interest in withholding such documents clearly outweighs the public interest in disclosure; (2) personnel or medical files and similar files the disclosure of which would constitute an invasion of personal privacy . . . ."