[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S REQUEST TO REVISE
The plaintiff Marion Greene brought a three count complaint against the defendant alleging that the defendant labor union breached its duty of fair representation to the plaintiff, a former teacher and member of the bargaining unit, by failing to file a grievance on his behalf concerning his former employer's alleged refusal to grant him a leave of absence extending beyond June 30, 1987.
Count I of the complaint alleges the following:
 1. The plaintiff was a school teacher in the New London Public School system for 18 years through the school year 1986-1987.
 2. During said year the plaintiff was a member of the Defendant New London Education Association which was the exclusive representative of a unit consisting of all certified professional CT Page 2267 employees of the New London School system.
 3. Said New London Education Association had a contract in effect in 1986-1987 with the New London Board of Education (all references hereafter are to said contract).
 4. Said contract provided for a grievance procedure as the sole remedy for any alleged breach of the Bargaining Agreement or any alleged violation of a right thereunder. (ARTICLE III E.5).
 5. During said school year the plaintiff became incapacitated by a physical and/or emotional illness.
 6. The plaintiff requested the school administration and the New London Board of Education to grant him a leave of absence pursuant to Article XVI; they instead of unconditionally granting the request demanded plaintiff's resignation effective June 30, 1987 in exchange therefor and in return granted a leave of absence from May 5th through June 30, 1987.
 7. The plaintiff was in no condition because of his disabilities to protest the Board of Education demand and left the matter in the hands of the defendant union who was fully aware of the foregoing.
 8. The defendant declined to file a grievance on his behalf and took no action to protect the plaintiff's interests or bargained-for rights.
 9. The plaintiff being left with no viable alternative and in his vulnerable state, acceded to the demands of the Board of Education submitting his letter of resignation effective June 30, 1987.
 10. The plaintiff had at all relevant times ample medical reason and support to have qualified for an unconditional leave of absence without the requirement that he resign. CT Page 2268
 11. The defendant had the duty to institute grievance proceedings in the name of the plaintiff and pursue same through arbitration and failed to do so although requested by the plaintiff.
 12. The defendants failure to act was in breach of the duty of fair representation and was in breach of the contract.
 12. The defendants failure to act was in breach of the duty of fair representation and was in breach of the contract.
 13. As direct result of the defendant's refusal to act, the plaintiff resigned June 30, 1987 when he would not have otherwise have done so, and after an appropriate leave as requested he would have returned to teaching if his request for a leave of absence had been properly granted.
 14. As a direct result of his forced early and untimely retirement, as precipitated by the defendant's inaction, the plaintiff has suffered the following losses:
1. Loss of income;
 2. Loss of insurance and fringe benefits;
3. Reduction of retirement benefits.
 15. Had the defendant properly discharged its duties to the plaintiff, he would in all probability not have had to resign.
Count II of the complaint is the same as paragraphs 1 through 13 of Count I, and in lieu of paragraphs 14 and 15 in Count I makes the following allegations in paragraphs 14, 15 and 16 of Count II:
 14. As a direct result of his forced early and untimely retirement, as precipitated by the defendant's inaction, the plaintiff has suffered emotional distress the effects of which are likely to be CT Page 2269 permanent.
 15. The defendant knew or should have known that such injury was likely to occur by its failure to act to protect him because it had knowledge of his physical and emotional disabilities and the defendant should have realized its conduct involved an unreasonable risk of causing the distress.
 16. Had the defendant properly carried out its duties, the plaintiff would likely not have had to resign.
Count III of the complaint alleges the same paragraphs as 1 through 14 of the first count and in lieu of paragraph 15 of the first count makes the following allegation:
 14. The union owed the plaintiff the duty as his fiduciary to protect him, and failing to have done so, caused him to suffer the damages and losses hereafter mentioned.
The defendant has requested that the plaintiff revise his complaint by deleting therefrom the second and third counts which the defendant claims are repetitious because they repeat the same cause of action for breach of the duty of fair representation, concerning the same circumstances, as alleged in the first count.
The defendant has properly recognized that our Connecticut Supreme Court, following federal precedent, has held that in processing grievances a teachers' union holds a duty of fair representation to those within the bargaining unit it exclusively represents. Masto v. Board of Education,200 Conn. 482, 487 (1986).
In support of the request to revise the defendant makes the following claim:
 Because the Teacher Negotiation Act (TNA) (C.G.S. Section 10-153a, et seq.) is patterned on the National Labor Relations Act (NLRA), federal court interpretations of the NLRA ". . . are of great assistance and persuasive force . . ." in interpretation of the TNA. Board of CT Page 2270 Education v. Connecticut State Board of Labor Relations, 190 Conn. 235, 241
(1983); West Hartford Education Association v. DeCourcy, Inc., 162 Conn. 566, 578-79 (1972). It is thus significant that the United States Supreme Court has held that a union's failure to enforce a collective bargaining agreement, as is alleged in this case, gives rise only to a cause of action for breach of the DFR, unless ". . . the is language in the collective bargaining agreement specifically indicating an intent to create obligations enforceable against the union by individual employees." United Steelworkers of America, AFL-CIO-CLC v. Tharon Rawson, ___ U.S. ___, Slip Op. (attached), p. 5 (1980). Because plaintiff does not allege that there is such language in the collective bargaining agreement on which he relies, his sole cause of action against defendant union is for breach of the DFR. However, he may not allege the same cause of action, concerning the same facts, three times, as he has done in his complaint. . . .
The Court is not persuaded by that argument insofar as it relates to Count II which raises a claim of emotional distress. The United Steelworkers case relied upon by the defendant held that if a union failed to perform a duty in connection with inspection of the premises, that it was a duty arising out of the agreement signed by the union as the miners's bargaining agent, and not a duty of reasonable care owed to every person in society. In holding that the plaintiff could not maintain an action against the union arising out of mere negligence, even in the enforcement of the collective bargaining agreement since that does not state a claim for breach of the duty of fair representation, the United Steelworkers court stated in part as follows:
 In recent cases, we have recognized that the pre-emptive force of section 301 extends beyond state-law contract actions. In Allis-Chalmers Corp. v. Lueck, 471 U.S. 202
(1985), we held that a state-law tort action against an employer may be pre-empted by section 301 if the duty to the employee of which the tort is a violation is created by a collective CT Page 2271 bargaining agreement and without existence independent of the agreement. Any other result, we reasoned, would "allow parties to evade the requirements of section 301 by relabeling their contract claims as claims for tortious breach of contract." Id., at 211. We extended this rule of pre-emption to a tort suit by an employee against her union in Electrical Workers v. Hechler, supra. There Hechler alleged that her union had by virtue of its collective bargaining agreement with the employer and its relationship with her assumed the duty to ensure that she was provided with a safe workplace, and that the union had violated this duty. As in Allis-Chalmers, the duty relied on by Hechler was one without existence independent of the collective-bargaining agreement (unions not, under the common law of Florida, being charged with a duty to exercise reasonable care in providing a safe workplace, see 481 U.S., at 859-860) but was allegedly created by the collective-bargaining agreement, of which Hechler claimed to be a third-party beneficiary, see id., at 861. Because resolution of the tort claim would require a court to "ascertain, first, whether the collective-bargaining agreement in fact placed an implied duty of care on the Union . . . , and second, the nature and scope of that duty," id., at 862, we held that the tort claim was not sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of section 301. . . .
 If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement signed by the Union as the bargaining agent for the miners.
It is significant to note that there is no mention in the opinion of the majority of the court in United Steelworkers of the decision in Farmer v. Carpenters, 430 U.S. 290,51 L.Ed.2d 338, 97 S.Ct. 1056 (1977). Farmer involved a claim by a union member that the defendant union had intentionally engaged in "outrageous conduct, threats, CT Page 2272 intimidation, and words" that caused the plaintiff to suffer "grievous mental and emotional distress as well as great physical damage."
In sustaining the right to bring such a claim against the union, the Farmer court stated in part as follows:
 The State, on the other hand, has a substantial interest in protecting its citizens from the kind of abuse of which Hill complained. That interest is no less worthy of recognition because it concerns protection from emotional distress caused by outrageous conduct, rather than protection from physical injury, as in Russell, or damage to reputation, as in Linn. Although recognition of the tort of intentional infliction of emotional distress is a comparatively recent development in state law, see W. Prosser, Law of Torts, sec. 12, pp. 49-50, 56 (4th ed 1971), our decisions permitting the exercise of (430 U.S. 303) state jurisdiction in tort actions based on violence or defamation have not rested on the history of the tort at issue, but rather on the nature of the State's interest in protecting the health and well being of its citizens.
This Court holds that under the rationale of Farmer, a union employee has the right to bring an action sounding in emotional distress against the union for breach of the duty of fair representation. Therefore, the defendant's request to revise by deleting the second count is denied. As stated earlier, the only difference between the first count and the third count is the allegation in the third count that the union owed the plaintiff the duty as his fiduciary to protect him, and failing to have done so, caused him to suffer the damages and losses hereinafter mentioned. Both the first count and the third count claim the exact same damages. Both counts seek damages for the alleged failure of the duty of fair representation. Both the first count and the third count are repetitious and result in duplication of counts. A request to revise is the proper method for deleting repetitious material from a complaint such as duplicative counts. Delvecchio v. Mobil Oil Corporation, 1 Conn. Super. 635, 636 (1982). The Court therefore grants the defendant's request to revise by deleting Count III. CT Page 2273
AXELROD, J.