[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case came before this court for trial on the merits of the plaintiff's claim that the defendant Middletown Federation of Teachers ("MFT") violated its duty of fair representation in connection with disciplinary proceedings against the plaintiff, a high school teacher who was at all relevant times a member of the bargaining unit represented by the defendant.
The plaintiff claims that the MFT breached its duty of fair representation by 1) withdrawing a grievance challenging the plaintiff's suspension on a charge of sexually harassing a student, and 2) refusing to assign its staff counsel to defend him or to pay his expenses in termination proceedings commenced by the Middletown Board of Education several months later.
The court finds the facts to be as follows. The plaintiff became a tenured teacher in the Middletown public school system in September 1983, and he continued to be employed at Middletown High School in 1994 as a teacher of foreign languages. In February 1994, a student reported to another teacher, Christine Marselli, that the plaintiff had made overtures to her that she considered to constitute sexual harassment. The teacher referred the student to the administrator who investigates such issues.
After an investigation, the superintendent of schools, David Larson, notified the plaintiff that he was being suspended without pay for a twenty-day period. The MFT took the position that the suspension violated a provision of the collective bargaining agreement between the Middletown Board of Education and the MFT that required disciplinary actions against teachers to be for just cause. The MFT pursued the grievance through the steps set forth in the contractual grievance procedure, which concluded with binding arbitration by an arbitrator of the American Arbitration Association. (Ex. 16, para. 20:3:6). CT Page 5489
On the first day of the arbitration hearing in November 1994, the Board of Education presented its witnesses, concluding with direct testimony by Ms. Marselli. The plaintiff believed that Ms. Marselli had instigated the student's compliant and was otherwise trying to harm him as part of longstanding hostilities between the two teachers. The plaintiff was represented at the grievance arbitration by Patricia Fitton, a field representative of the statewide labor organization of which the MFT was a local unit. The second day of the hearing was scheduled for late January 1995. That session of the hearing was postponed, and in the hiatus that followed the postponement, the superintendent proposed a settlement. Ms. Fitton and two other union officials favored the proposed settlement and met with the plaintiff to urge him to accept it. The terms of the settlement offer were a reduction in the length of the suspension, resulting in a payment to the plaintiff for nine days of lost wages, in return for 1) an admission that the plaintiff had engaged in the conduct alleged, 2) withdrawal of the grievance, and 3) a pledge not to use any of the information related to the controversy in any civil suit or other proceeding against any person involved.
The union officials, especially Ms. Fitton, had become aware that the plaintiff thought that the point of the grievance arbitration was to establish that Ms. Marselli had engaged in misconduct rather than to show that the suspension of the plaintiff was not for good cause. Ms. Fitton considered the plaintiff to be so obsessed with his controversy with Ms. Marselli that he was likely to testify in a way that would doom his prospects of winning the arbitration. The court finds that the union officials were concerned that the plaintiff was set on a course of vengeance that would jeopardize his employment and that they urged him to settle the grievance on the terms suggested as a means of addressing this broad concern, rather than addressing the narrow issue of the particular suspension that was the subject of the grievance.
After several hours of discussion, the plaintiff signed the proposed settlement agreement; however he rescinded his agreement a day later. The plaintiff claims that the union officials then withdrew the grievance without his consent. The union officials testified that they urged the plaintiff to pursue the grievance but that he did not wish to do so since he realized that the union did not share his view that the focus of the arbitration should be to expose Ms. Marselli as a wrongdoer. CT Page 5490
The court finds that the plaintiff advised Stefan Ozga, a union field representative, that he did not wish to pursue the grievance and that he would address his controversies in other ways. Mr. Ozga drafted a letter for the plaintiff to sign confirming that the plaintiff wanted the grievance to be withdrawn. Mr. Ozga, who was clearly concerned with documenting the voluntariness of this step, asked the plaintiff to sign the letter, which is dated April 18, 1995, at the union's office in Rocky Hill, where the plaintiff's signature was notarized by Elizabeth Magneson. The court finds credible Ms. Magneson's testimony that she witnessed the plaintiff's signature.
The plaintiff claims that the authorization to withdraw the grievance is a fraudulent document. He claims he signed a blank piece of paper at Mr. Ozga's request and that Mr. Ozga wrote the text authorizing withdrawal and that Elizabeth Magneson then supplied a false jurat to the document. In fact, the union representative at one time obtained signatures on blank pieces of paper from the plaintiff, but that did not occur until August, when the signatures were used to facilitate meeting the short deadlines required for responses and requests under the Teacher Tenure Act, after the board of education proposed to terminate the plaintiff's employment.
The Superintendent of Schools, Dr. Larson, testified that Mr. Ozga hand-delivered to him on April 18, 1995 a withdrawal of the grievance.
Though the plaintiff claims not to have authorized the withdrawal of the grievance, his conduct after April 1995 did not suggest any expectation that the grievance was still pending. He did not testify that he ever asked any union representative after April 18, 1995 when the next hearing date would be nor otherwise inquire as to the progress of the grievance. Since the arbitration was his forum for recovering lost wages and clearing his name and record, the court finds it unlikely that as intense a person as the plaintiff would have failed to show any interest if he really believed the grievance was still pending. His lack of inquiry supports the court's conclusion that he knew the grievance was no longer pending because he had authorized its withdrawal.
A week after he signed the letter requesting withdrawal of his grievance, the plaintiff signed another document prepared by CT Page 5491 Mr. Ozga after the plaintiff asked for documents and records concerning the matter to be sent to a private attorney, William Gallito. The court finds that this request was in aid of the plaintiff's resolve to pursue Ms. Marselli through means other than pursuit of the grievance and that it is more likely than not that the mention of civil suits in the proposed settlement agreement steered the plaintiff's thoughts in the direction of suing Ms. Marselli for what the plaintiff felt to be her damaging conduct toward him.
In June 1995, the Superintendent suspended the plaintiff and had him escorted from the high school after reports that the plaintiff had engaged in conduct aimed at retaliating against Ms. Marselli and the student complainant in the harassment charge.
In August of 1995, the Superintendent notified the plaintiff that he was proposing the termination of his employment. That notification is the first step in the administrative process required by the Teacher Tenure Act, Conn. Gen. Stat. § 10-151. Mr. Ozga assisted the plaintiff with filing the various requests and responses required under the Teacher Tenure Act; however Mr. Ozga informed the plaintiff that MFT would be deciding whether or not to provide him with legal representation at the termination hearing.
At a meeting on August 23, 1996, the executive council (also referred to as the executive board) of the MFT voted "NOT to support Sal." The plaintiff wrote to the new president of the union, Kathleen Gallagher, requesting an opportunity to meet with the executive council to request that it provide him with a defense. He pointed out that he had been a dues-paying member of the union for nearly twenty years. The executive council agreed to discuss the request again and met on September 18, 1995. Before the plaintiff arrived at the meeting, the union president told the council, which included the officers and building representatives of the union, that the union was not required to pay for an attorney for the termination proceedings or to pay the fees of the arbitrator who served on the termination hearing panel. She told the council that the plaintiff had failed to follow union advice in the past. It is not clear whether the advice referred to was the advice not to withdraw the grievance or the advice to end pursuit of the dispute with Ms. Marselli.
The plaintiff addressed the council and emphasized that he was unable to pay the costs of his own defense. He argued at length that the superintendent had misinterpreted the details of CT Page 5492 the incidents that were listed as reasons for termination.
The executive council voted 12-1 not to alter its previous decision not to provide the plaintiff with a defense. It voted 9-2
not to contribute to the fees of the arbitrators.
The MFT had access to the services of a lawyer, Brian Doyle, who was a salaried employee of the statewide union. If the MFT had voted to provide the plaintiff with counsel, Atty. Doyle would have been assigned to represent him. No evidence was presented to indicate that this arrangement would have resulted in an expense to the MFT or that it would have been a financial hardship for the MFT to bear the expense. The plaintiff presented as a witness another MFT teacher who had undergone a termination hearing and who had been furnished with representation by Atty. Doyle in a proceeding that concluded on January 4, 1994. No evidence was presented that the MFT had any standards or policy concerning the furnishing of legal assistance or costs to union members in connection with termination hearings, and this court concludes that the union exercised in its discretion on a case-by-case basis whether to furnish such benefits.
By a letter dated September 18, 1995, the union president advised the plaintiff of the vote by the MFT executive council "not to support your termination defense" and stated "[o]n behalf of the Executive Board, I would like to remind you that the Federation has provided you with considerable assistance over many years."
Though the union president stated her personal reaction to the plaintiff's request, she did not vote; and the court has no way of determining the defendant union's reasons for its vote and its refusal to provide the plaintiff with legal counsel, since none of the persons who voted testified as to their reasons for their vote.
The plaintiff hired Atty. John Williams to represent him in the termination hearing before a three-member panel. The majority of the panel voted to recommend that the board of education terminate the plaintiff's contract of employment. The board of education adopted the panel's recommendation; and the plaintiff appealed the termination to the Superior Court pursuant to Conn. Gen. Stat. § 10-151 (e). The court dismissed the appeal.
The plaintiff testified that the cost of his defense was CT Page 5493 $20,000, an amount that apparently includes his share of the fee of the neutral arbitrator ($6,052.50) and the fee of the arbitrator he selected to serve on the panel, $8,415.00.
The duties and entitlements of employee organizations that represent teachers in collective bargaining with school districts are defined in Conn. Gen. Stat §§ 10-153a and 153b. Section 10-153a guarantees teachers the right to be represented by a representative organization to negotiate "with respect to salaries, hours and other conditions of employment." Section 10-153a
(b) provides that "[t]he organization designated as the exclusive representative of a teachers' or administrators' unit shall have a duty of fair representation to the members of such unit." An organization selected by members of a bargaining unit as the representative of that unit is "the exclusive representative of all the employees in such unit for the purposes of negotiating with respect to salaries, hours and other conditions of employment, provided any certified professional employee or group of such employees shall have the right at any time to present any grievance to such persons as the local or regional board of education shall designate for that purpose."
Conn. Gen. Stat. § 10-151, the Teacher Tenure Act, does not mention such bargaining representatives as participants in the termination of a teacher. All notices in the termination hearing process are required to be provided to the teacher directly. If a teacher elects an arbitration panel with regard to the proposed termination, the teacher, not the union, is the "party" pursuant to § 10-151; and it is the teacher, not the union, who has a statutory right to appeal the termination, pursuant to Conn. Gen. Stat. § 10-151(e).
The statutes governing union representation of teachers thus provide that individual teachers may pursue grievances and that individual teachers are the parties to termination proceedings, with no role specified for the union.
The selection and disciplining of teachers are powers reserved to the board of education in the collective bargaining agreement between the MFT and the Middletown Board of Education. (Ex. 16, Article 4). The only limitation on this right specified in the contract is the provision at Article 5.8 that "[a]ny suspension or reduction in rank or compensation shall be only for just cause." The collective bargaining agreement contains no provisions limiting the school board's decision to terminate a teacher's CT Page 5494 employment, a matter generally considered a matter of employer prerogative subject only to the constraints of the Teacher Tenure Act, § 10-151, not a matter of union bargaining rights.
While teachers' unions may often decide to provide the aid of union lawyers to unit members whose termination has been proposed, this practice is not compelled by the duty of fair representation. Since hiring and firing are not among the mandatory subjects for bargaining, and are statutorily entrusted to boards of education pursuant to § 10-15(b) and (d), they are not subjects as to which the union is the bargaining representative of a teacher. Participation with regard to termination of employment is not enumerated in § 10-153b(e) as a subject of union representation.
Where a school board acts adversely to a bargaining unit member in a situation within the scope of the union's statutory authority to represent employees, the union is required to pursue only those grievances that are meritorious. Vaca v. Sipes,386 U.S. 171, 177 (1967); Tedesco v. Stamford, 222 Conn. 233, 248 (1992).
Federal judicial interpretations of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., have been held to be of great assistance and pursuance force in interpreting the Connecticut Teachers Negotiation Act, § 10-153a et seq. WestHartford Board of Education v. Connecticut State Board of LaborRelations, 190 Conn. 235, 241 (1983); West Hartford EducationAssociation v. DeCourcy, Inc., 162 Conn. 566, 578-79 (1972). Even in the context of grievances that are within the representation duties of a union, the union does not have an obligation to pursue grievances that it believes in good faith to be unwarranted. Bazarte v. United Transportation Union,429 F.2d 868, 872 (3d. Cir. 1970); Banks v. Bethlehem Still Corp. ,870 F.2d 1438, 1444 (9th Cir. 1989).
The Connecticut Supreme Court has observed that "an employee has no cause of action whatsoever against his union where the employer has not breached the collective bargaining agreement."Masto v. Board of Education, 200 Conn. 482, 487 (1986), citingHines v. Anchor Motor Freight, Inc., 424 U.S. 554, 568-70,96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).
Termination proceedings are not among the functions as to which teachers' unions are statutorily entrusted with the duty to represent teachers. Since the MFT had neither a statutory nor a contractual duty to represent the plaintiff in his termination CT Page 5495 proceedings, it did not breach its duty of fair representation in refusing to furnish him with legal representation.
Conclusion
The court finds that 1) the plaintiff voluntarily withdrew his grievance and that the abandonment of the arbitration was his choice, not a failure of the duty of fair representation by the defendant and 2) the failure to provide the plaintiff with legal representation at a statutory termination hearing did not constitute a breach of the duty of fair representation. Judgment shall enter in favor of the defendant, which shall recover its statutory costs.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT