[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These administrative appeals were brought by the plaintiffs pursuant to General Statutes §§ 4-183 and 5-274(d), from decisions by the defendant, Connecticut State Board of Labor Relations ("the Labor Board").
On May 4, 1990, the plaintiffs, David Amadeo, Charles Brault, Charles Dickens, David Petrario and Paul Yarmncik, filed a complaint with the Labor Board which alleged that the defendants, the Connecticut Employees Union Independent ("the Union") and its agents, Jeffrey Janusonis and Richard Boyd, had breached their duty of fair representation to the plaintiffs, who were at all relevant times members of the union, in violation of § 5-272
of the Act Concerning Collective Bargaining for State Employees. The plaintiffs amended their complaint on December 20. 1990, alleging that the University of Connecticut Health Center ("the Health Center") had violated the Act by failing to act in good faith to adjudicate a grievance protesting reorganization and in resolving the underlying dispute. On January 22, 1993. the complaint was again amended to expand the allegations against the CT Page 10063 Health Center, by alleging that the Health Center had refused to bargain in good faith, refused to supply information and withheld information, imposed a unilateral change in employment, refused to discuss grievances and failed to comply with grievance settlements. The amended complaint realleged the breach of duty of fair representation against the union.
While the foregoing complaint was pending, on May 8, 1991, the plaintiffs filed a second complaint against the Health Center, which charged that the Health Center had retaliated and discriminated against the plaintiffs for their participation in protected concerted activities in violation of § 5-272 of the Act. Specifically, the complaint alleged that the following actions of the Health Center constituted illegal retaliation against the plaintiffs: (1) refusing to abide by valid grievance settlements and/or arbitration awards; (2) involuntary transferring the plaintiff Paul Yarincik; (3) pursuing unfair disciplinary actions and supporting other unfair treatment against the plaintiffs; (4) denial or unfair distribution of overtime opportunities; (5) inequitable treatment of the plaintiffs; (6) requiring the plaintiffs to perform unsuitable work or to work outside their job descriptions; (7) failing to provide training and advancement opportunities to the plaintiffs; (8) passing over and refusing promotional opportunities to the plaintiffs; (9) failing to place most of the plaintiffs on essential personnel lists, despite their senior status and skill levels, thereby exposing them to involuntary furloughs; (10) arbitrarily changing the plaintiffs' lunch breaks. After hearings on this second complaint against the Health Center, the matter was dismissed by the Labor Board in Decision No. 3592 on April 20, 1998. The administrative appeal from the Labor Board's decision in the second complaint bears Docket No. CV 98 0492624 in this court. None of the issues in this second administrative appeal were briefed or argued, and accordingly are deemed abandoned. At oral argument on these administrative appeals, which had been consolidated, the plaintiffs admitted that the retaliation claims had been abandoned. Accordingly, the plaintiffs' administrative appeal from the Labor Board's decision based on the retaliation claim is dismissed.
On the original complaint, the Labor Board conducted hearings on October 29, 1992, January 26, February 1, May 12, October 18, 19, 21 of 1993, January 21, 25, March 7, May 20 and 24 of 1994. The parties called a number of witnesses and introduced numerous exhibits. Subsequent to the hearings, all parties filed post CT Page 10064 hearing briefs. On September 19, 1995, the Labor Board issued a Decision and Dismissal of Complaint (Decision No. 3335), which held that the union did not breach its duty of fair representation and the Health Center did not engage in a prohibitive practice by its schedule change and destruction of documents. It is from that decision which this. remaining administrative appeal (Docket No. CV 98 0492618) emanates.
In this appeal, the plaintiffs advance a number of arguments. First, the plaintiffs claim that there is no substantial evidence to support the Labor Board's decision that the schedule change was not done primarily to reduce overtime, in violation of the Collective Bargaining Agreement. Next, the plaintiffs argue that the evidence established as a matter of law that the union breached its duty of fair representation and that the Labor Board applied an incorrect legal standard. Finally, the plaintiffs claim that all of the substantial evidence showed that the state illegally disposed of documents.
It is clear that the scope of this court's review of an agency's decision is very restricted. Pet v. Dept. of HealthServices, 228 Conn. 651, 660 (1994). General Statutes § 4-183
(j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are., clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . ."
"This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court., to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact and issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than an clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." CT Page 10065 (Brackets omitted; citations omitted, internal quotation marks omitted.) New England Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998).
The plaintiffs' allegations against the Health Center resulted from the reorganization of the heating, ventilation, air conditioning and refrigeration ("HVAC/R") area in the early part of 1985, which brought about a schedule change and corresponding reduction in the plaintiffs' overtime earnings. The plaintiffs contend that the schedule change was a unilateral change to a mandatory subject of collective bargaining and therefore, constituted a violation of the act. The Labor Board found that the parties' collective bargaining agreement provided a defense to this allegation, in that the contract provided that "changes in work weeks and hours shall be made on the basis of reasonableness. No change in work schedules shall be made for the primary purpose of avoiding the payment of overtime." (Return of Record (ROR), Item 15, Exhibit 11.) The plaintiffs, who were all Qualified Craft Workers ("QCWs"), claim that the Labor Board overlooked "virtually all of the evidence" (Plaintiffs' Brief, p. 12) when it concluded that the unilateral schedule change was permitted by the parties' collective bargaining agreement.
The Labor Board found that in the late 1970's and early 1980's, employees involved in the completion of the Health Center were involved in the state's major-effort to complete the Health Center and have it in full operation. For many of the QCWs, this effort included working a component of a three shift, around the clock schedule, working 40 or more hours per week as part of their regular schedule. Prior. to November 1984, QCWs in trades other than HVAC/R had reverted to a 5 day, 35 hour work week, which is the standard state employee schedule. Only the HVAC/R group, which included some Maintainers as well as the QCWs, continued with the three shift 40 hour per week schedule. (ROR, Item 17, Decision No. 3335, p. 2, ¶ 4.)
In the months prior to November 1984, management at the Health Center had considered reorganizing the Facilities Management and Operations Department. This proposed reorganization addressed management's view that many tasks performed by QCWs and HVAC/R were inappropriate to the high skill level of those employees and more appropriate to the Maintainers. In November 1984, a change was proposed in the work assignments and schedule of the HVAC/R workers at the QCW level, to become effective in January 1985. With that change, the higher paid QCWs CT Page 10066 would be assigned to the 35 hour HVAC/R division, where their schedule would resemble that of other craft shops in Facilities Management.
The Labor Board's findings that the primary purpose of the change was not to avoid the payment of overtime is supported by substantial evidence. That the schedule change was implemented as a result of a concern with efficiency of operations rather than a reduction of overtime is evidenced by internal memoranda. A memorandum from David 0. Elliot, Associate Director, Facilities Management and Operation to Timothy Hurlock, Financial Officer, Facilities Management and Operation, dated September 24, 1984, states:
 The change in organization has also reduced overtime. Maintainers on the second and third shift can handle a diverse number of jobs and at least secure problems until the following day. The flexibility of the Maintainer specifications has enabled us to work on jobs that we might have had problems requiring QCW (HVAC/R) personnel to handle.
(ROR, Item 15, Exhibit 15.)
Similarly, Elliot's memorandum dated October 1, 1984, to Joseph Wankeri, Director, Personnel Department, refers to changing QCWs in HVAC/R from 40 to 35 hours and placing 5 senior QCWs on a 35 hour schedule as more vacant maintenance positions are refilled. (ROR, Item 15, Exhibit 3.) Moreover, at the hearing before the Labor Board, Wankerl testified that his understanding from Elliot was that Elliot "wanted to make this change primarily for operational reasons" and to "the improvement in the quality of the maintenance function." (ROR, Item 15, Transcript of May 20, 1994, pp. 34, 61.) The plaintiffs' argument that no reorganization actually took place is unavailing, given the schedule change which was implemented.
The Labor Board's finding that the evidence failed to demonstrate that the primary purpose of the change was to avoid the payment of overtime was also supported by the absence of any reduction in overtime resultant from the schedule change. The Maintainers, still working the three shift, 40 hour work week, subsequent to the schedule change which reduced only the QCWs' work hours received 5 hours of built in overtime each week over the standard 35 hours. The Maintainers were members of the same bargaining unit as the QCWs, although the plaintiffs evidently CT Page 10067 believed the work should be their own.
The foregoing, together with other evidence presented during the hearings, support the Labor Board's conclusion that the evidence had failed to demonstrate that the primary purpose of the change was to avoid the payment of overtime. The Labor Board concluded:
 We recognize that the legitimate purpose of administrative efficiency, which may, nonetheless, result in a reduction of overtime, may be hard to distinguish from an improper "primary purpose" of "avoiding the payment of overtime". Similarly, a reduction of overtime could be one factor in a decision, but still fail to represent a "primary purpose". We conclude, however, that the employer here had an administrative purpose in instituting this reorganization, which was not primarily the reduction of overtime, and that the complainants have not demonstrated otherwise.
(ROR, Item 17, Decision No. 3335, p. 18.)
The plaintiffs' claim that the Labor Board overlooked "virtually all of the evidence" when it concluded that the unilateral schedule change was permitted by the parties' collective bargaining agreement is unsupported in the record. It is clear that the Labor Board considered the conflicting evidence argued by the plaintiffs. However, the presence of conflicting evidence does not mean that there is not substantial evidence to support the Labor Board's determination. Indeed, it was the function of the Labor Board to decide the facts and resolve any conflicts which there may have been in the evidence. SeeSchallenkamp v. DelPonte, 229 Conn. 31, 39-40 (1994).
Accordingly, the plaintiffs' argument that there was no substantial evidence to support the Labor Board's decision that the schedule change was not done primarily to reduce overtime, in violation of the collective bargaining agreement, must fail.
Another argument advanced by the plaintiffs is that all of the substantial evidence showed that the state illegally disposed of documents. (Plaintiffs' Brief, p. 17.) The Labor Board concluded that the record was insufficient to sustain any finding against the Health Center on these allegations. The Labor Board found that the plaintiffs failed to prove that the information which allegedly was concealed or destroyed was, in fact, the CT Page 10068 subject of a specific document request. It is clear that an employer is required to provide relevant information necessary for the union to perform its collective bargaining function.Board of Education v. Connecticut State Board of Labor Relations,190 Conn. 235 (1983). However, a necessary precondition to a finding of a failure to provide information is that the union actually made a request for such relevant information. In the present case, the evidence reflects one general information request, made by the union through Steven Perruccio in January, 1985, which was complied with by the Health Center. (ROR, Item 15, Exhibit 32.)
The plaintiffs argue that the destruction of documents constituted a prohibited practice. While some documents were destroyed, there was no evidence presented that the destroyed documents related to the plaintiffs' grievance. Nor was there evidence presented as to any improper motive or intent on the part of the Health Center.
The plaintiffs also argue that the destruction of the documents violated General Statutes § 11-8 et seq., the State Records Retention Statutes. See also General Statutes § 1-18. The Labor Board, however, has no authority to enforce violations of General Statutes § 11-8. To the extent that the plaintiffs relied upon this alleged violation as evidence of an improper intent on the part of the Health Center, the Labor Board again found, based upon the record, that the evidence was insufficient to sustain that conclusion. There is simply no evidence to show what the destroyed documents might have contained, which is fatal to the plaintiffs' claim, given the lack of any bad motive or intent.
In this administrative appeal, there is no basis on which to find that any of the incidents of destruction were done with a motive to frustrate the plaintiffs' case or with knowledge that any documents were relevant to this case. Thus, the Labor Board's conclusion in this regard will not be disturbed, notwithstanding the plaintiffs' arguments.
The plaintiffs' remaining argument is that the evidence established as a matter of law that the Union breached its duty of fair representation and that the Labor Board used the wrong legal standard. (Plaintiffs' Brief, p. 13.) The plaintiffs argued before the Labor Board that the union breached its duty of fair representation in two ways: (1) by failing to vigorously pursue a CT Page 10069 meritorious grievance; and (2) by failing to properly inform the plaintiffs about the status of the grievance.
The factual background on which the union arguments are based, as found by the Labor Board, is as follows. On November 19, 1984, the union steward, Jeff Janusonis, was notified of a work schedule change involving the HVAC/R personnel including the QCWs. The work schedule change was to take effect on January 7, 1985. On December 10, 1984, a union grievance, designated as "C-EUI C-708", which protested an unfair work schedule change, was filed. This was a class grievance referred to, by number rather than by the name of any individual grievant. A number of meetings between management and the union followed. The union requested information regarding the schedule changes and the reorganization of the HVAC/R area. The union was provided a summary report, charts, and a letter explaining the reasons for the reorganization and work schedule change. After a meeting on January 14, 1985, Steven Perruccio, the union's contract and grievance administrator, came to believe that he had no proof that management was reorganizing the HVAC/R function in order to avoid the payment of overtime. Perruccia had found no evidence that management's primary purpose for the change was other than to improve efficiency. As the QCW overtime grievance (C-708) progressed, the union steward filed another grievance, C-798, on behalf of an employee in the Health Center, unrelated to the earlier grievance. Grievance C-798 was filed on June 28, 1985. However, as the overtime grievance progressed, on March 26, 1986, the union filed a grievance at the next step which was incorrectly identified as "CEUI C-798". Sometime during the period 1984 to 1987, a Grievance Alternative Settlement Procedure, known as "GASP", was devised as a means of disposing of some of the large number of grievances filed by the union without resort to full hearings. Perruccio, as Contract and Grievance Administrator, and a Labor Relations Specialist from the state's office of labor relations, would meet to discuss a number of grievances with the intended purpose of resolving them without formal hearings or arbitration. On that agenda for discussion on June 12, 1986, was a Health Center case designated as "CEUI-C-798; OLR No. 06-3741; work schedule change". The OLR number was still correctly matched with the "work schedule change" grievance, but bore an incorrect CEUI number, C-798, which was the meal ticket grievance. Listed on the cases to be considered under GASP on July 23, 1986 was one listed only as "C-798". A Perruccio memorandum dated July 10, 1986, asked for the current status of grievance "C-798, UCONN HC, meal money". The CT Page 10070 response was that this grievance was "dead; withdrawn". (ROR, Item IS, Exhibit 60.) By letter dated August 1, 1986, Perruccio informed the Office of Labor Relations that a number of CEUI cases should be "withdrawn without prejudice", including CEUI-C-798. (ROR, Item 15, Exhibit 34.) There was no further action by the Office of Labor Relations on either grievance C-798 or C-708.
The Health Center's director of personnel inquired of union staff representative Richard Monthei at some point after March 26, 1986 about scheduling a hearing for grievance C-708 and was told that Monthei didn't think the grievance would be brought forward because the union thought it was a loser. Although the union argued that Monthei's decision to drop the grievance was reasonable in light of the information available to him at the time, based on the facts presented the Labor Board concluded that the grievance was mishandled and subsequently lost. The Labor Board further concluded however, that the union's failure to observe and correct the typographical error, although negligent, did not rise to an intent to deny the plaintiffs of their opportunity to have the grievance heard and, therefore, found no violation of the duty of fair representation. Additionally, the Labor Board concluded that the conduct was not arbitrary nor discriminatory so as to breach the duty of fair representation. The Labor Board continued that even if Monthei had deliberately dropped the grievance, there would still not be a violation. The Labor Board held that if a conscious decision not to pursue the grievance was made, it was only after the review of a substantial number of documents regarding the work schedule change. The Labor Board held that this exercise of discretion by the Union was proper since it was done in good faith, without discrimination, and was not arbitrary.
The plaintiffs argue that the Labor Board used the wrong legal standard when analyzing the issue of whether the union breached its duty of fair representation to the plaintiffs. The plaintiffs argue that the evidence established a violation as a matter of law.
The Labor Board's standard for assessing the existence of a breach of the duty of fair representation stems from the rationale of the United States Supreme Court in Vaca v. Sipes,386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and from Connecticut General Statutes § 5-271 (c). A union breaches its duty of fair representation when the evidence demonstrates that the union has failed "to serve the interests of all members CT Page 10071 without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct". Vaca v. Sipes, supra. 386 U.S. 177.
This court finds that the Labor Board applied the correct legal standard. See Genovese v. Gallo Wine Merchants, Inc.,226 Conn. 475, 488 n. 12 (1993). The Labor Board's finding of negligence on the Union's part in handling the plaintiffs' grievance did not necessitate a finding of a breach of the duty of fair representation. Federal Court decisions consistently hold that mere negligence on the part of a union does not constitute a breach of the duty of fair representation. Ryan v. New YorkNewspaper Printing Pressman's Union No. 2, 590 F.2d 451, 455 (2d Cir. 1979); Walk v. PIE Nationwide Inc., 958 F.2d 1323, 1326 (6th
Cir. 1992). Negligence on the part of a union, without more, simply does not establish the necessary elements to sustain a breach of duty of fair representation claim. Webb v. ABF FreightSystem, Inc., 155 F.3d 1230 (10th Cir. 1998), citing United SteelWorkers of America v. Rawson, 495 U.S. 362, 372-73,110 S.Ct. 1904, 109 L.Ed.2d 362 (1990). Moreover, in order to find that the Union's actions were arbitrary, the Labor Board had to determine, in light of the overall circumstances presented, that the Union's conduct was so far beyond a "wide range of reasonableness" that it could properly be considered irrational. Air Line Pilots Assn.,International v. O'Neill, 499 U.S. 65, 66, 111 S.Ct. 1127,113 L.Ed.2d 57 (1991). In the present case, based on the testimony and exhibits admitted during hearings, the Labor Board could and did find the Union's processing of its own institutional grievance as negligent. The Labor Board then applied a correct legal standard to find that the Union's negligence did not amount to a breach of the duty of fair representation.
The plaintiffs also complain about the Union's failure to keep them properly informed of the status of the grievance. The plaintiffs contend that by requiring them to prove that the Union "acted deliberately to mislead the employees", the Labor Board incorrectly added an element to the standard for duty of fair representation. However, the Labor Board's decision in this regard clearly was based upon a failure of the evidence produced by the plaintiffs. The Labor Board's decision was based upon a review of the evidence in addition to a credibility determination concerning the plaintiff Yarincik's testimony, which was the link pin to this claim. The Labor Board stated: "The Complainants' case is based solely on Yarmncik's testimony, which is too vague and, at times, illogical to carry its burden." (ROR, CT Page 10072 Item 17, Decision No. 3335, p. 16.) The decision reflects that the Labor Board found, as a matter of fact, that there had not been repeated and frequent inquiries on the subject of grievance C-708 and that, therefore, the plaintiffs had not met their burden of proof. The Labor Board's findings of fact are supported by the record. Those facts do not evidence a deliberate intention to mislead the plaintiffs, which would constitute bad faith conduct, nor do they evidence action on the part of the union in such an arbitrary or perfunctory fashion such as to exceed all bounds of reasonableness. This court finds that the Labor Board's finding in this regard was supported by substantial evidence in the record and did not result from an incorrect legal standard.
The plaintiffs' argument that the evidence established as a matter of law that the union breached its duty of fair representation and that the Labor Board applied an incorrect legal standard does not find support in the record. Thus, the Labor Board's finding of no breach of the Union's duty of fair representation to the plaintiffs will not be disturbed.
In conclusion, based on the foregoing, the plaintiffs' administrative appeals from the Labor Board's decisions are dismissed.
Michael Hartmere, Judge