The Connecticut state board of labor relations (hereinafter the board) has appealed from the trial court's denial of a petition to enforce its order of August 3, 1981, directing the town of South Windsor to bargain with Council No. 4 of The American Federation of State, County and Municipal Employees (hereinafter AFSCME). The facts are not in dispute. On October 4, 1979, AFSCME filed a petition with the board pursuant to General Statutes 7-471 (1),[1] by which it *Page 340 
sought to become the representative of the supervisory employees of the town.[2]
Following two informal conferences *Page 341 
with the assistant agent of the board,[3]
the acting town manager, Charles N. Enes, and the AFSCME representative, on December 5, 1979, entered into a voluntary recognition agreement[4] which designated AFSCME as the exclusive bargaining representative of all but five supervisory town positions.[5] Because the town and the union were unable to agree on whether to include the five additional positions in the unit, the board, on January 4, 1980, notified the parties that it would conduct a hearing on the original petition on March 10. After the hearing, the board issued its decision on July 24.[6] *Page 342 
By letter dated September 10, 1980, eighteen of the nineteen employees who had previously signed authorization cards communicated to the board and to AFSCME their desires to withdraw the previous authorizations. Thereafter, on October 1, one of those employees, Edward C. Moniz, filed with the board a petition for decertification of the union. On October 3, the AFSCME representative, Peter Thor, wrote the town manager requesting contract negotiation.[7] The latter declined however, based upon the pending decertification petition. As a result of that refusal, AFSCME filed a complaint with the board pursuant to General Statutes (Rev. to 1981) 7-471 (4) alleging a violation of 7-470 (a) (4)[8] Subsequently, a second petition for decertification was filed by Moniz on February 20, 1981.
The board consolidated the original decertification petition and the union's complaint and conducted a hearing thereon on February 25, 1981, which was continued to April 21. On August 3, it issued a decision wherein it dismissed the petition for decertification as premature and ordered the town to negotiate with the union. No action was taken with respect to the February 20 decertification petition. The town filed a motion that the board reconsider its decision, but that was denied. Finally, on December 2, 1981, Moniz filed a third petition for decertification on behalf of the *Page 343 
employees. Throughout the course of the proceedings, the town manager had refused to bargain with the union.
On May 5, 1982, the board filed a petition in the Superior Court pursuant to General Statutes31-109 (a) to enforce its order of August 3, 1981. The court, on September 28, without a hearing or oral arguments, denied the petition for enforcement and remanded the matter to the board for an election. This appeal followed.
The issue for our determination, which is one of first impression, concerns the amount of time that must elapse before a petition for decertification may be filed when the union has been designated as unit representative by recognition agreement rather than by election.
General Statutes (Rev. to 1981) 7-471 (1) provides that "[n]o election shall be directed in any bargaining unit or any subdivision thereof within which in the preceding twelve-month period a valid election has been held." The board concluded that this language evinces the legislature's intent to afford a newly designated bargaining representative "a reasonable opportunity to make substantial headway towards obtaining a contract during a period that is free from the risk of losing its representative status because of ephemeral dissatisfaction by its members often generated by the length and the frustrations inherent in the bargaining process." The board went on to say that although the statute is silent with respect to employer-recognized unions, "[w]e have interpreted [7-471 (1)] as expressing a legislative policy to protect the designated union from risk of loss of its representative status during the one year period and to make this protection strong and extensive. . . . Since the legislature clearly contemplated a substantial period of similar protection for a union designated by the other method prescribed in *Page 344 
the Act (employee recognition) we conclude that the time period deemed reasonable for an elected union would be the same for an employer-recognized union. The purpose of designation in each case is the same as is the task to be performed or attempted by the union — to obtain a contract through bargaining. It therefore held that the original decertification petition filed on October 1, 1980, was untimely since it was filed within one year of the recognition agreement of December 5, 1979. We conclude, as did the trial court, that the board's interpretation of 7-471 (1) was erroneous.
There is no Connecticut case on this particular point. It is well established, however, that since the Connecticut Municipal Employee Relations Act, like the Connecticut Labor Relations Act, is patterned after the National Labor Relations Act, as amended, "`[T]he judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own acts.'" Winchester v. Connecticut State Board of Labor Relations,175 Conn. 349, 354, 402 A.2d 332 (1978), quoting West Hartford Education Assn., Inc. v. DeCourcy,162 Conn. 566, 579, 295 A.2d 526 (1972). In NLRB v. Cayuga Crushed Stone, Inc., 474 F.2d 1380 (2d Cir. 1973), the Court of Appeals for the Second Circuit had before it a similar issue. In that case, the court held that the one year rule does not apply to designations by employer recognition agreements. Rather, it concluded that "the Unions' status must be recognized for a reasonable period despite the loss of majority employee support." (Emphasis added.) Id., 1383.[9] We believe that the rationale of Cayuga Crushed Stone, Inc., is sound and we adopt this "reasonable period" standard as the rule in Connecticut. *Page 345 
The board, in its conclusion, held that "[a] reasonable time for a recognized representative to make substantial headway towards obtaining a contract is one year from the date of recognition and we interpret the Act as prescribing such a duration for the recognition and its exclusive quality. Cf. sec. 7-471 (1)." The board contends, therefore, that even if we follow Cayuga Crushed Stone, Inc., its conclusion that one year was a reasonable period meets the standard of that case. Moreover, it argues that its finding in this regard was within its discretion and should not be disturbed on appeal. We disagree.
In order to pass judicial review, the ultimate findings of the board must be supported, as the statute requires, by substantial evidence. General Statutes 31-109 (b); Success Village Apartments, Inc. v. Local 976, 175 Conn. 165, 170, 397 A.2d 85
(1978); L. Suzio Construction Co. v. State Board of Labor Relations, 148 Conn. 135, 138,168 A.2d 553 (1961). "`Substantial evidence is evidence that carries conviction. . . . It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . It means something more than a mere scintilla and must do more than create a suspicion of the existence of the fact to be established.'" Winchester v. Connecticut State Board of Labor Relations, 175 Conn. 349, 365-66,402 A.2d 332 (1978). The record in the present case is devoid of any evidence that one year was a reasonable period of time for the union to work towards obtaining a contract free from the risk of losing its representative *Page 346 
status in this particular case. Accordingly, we hold that the trial court was correct in its conclusion that the board acted illegally in dismissing the decertification petition. Therefore, the court properly denied the board's petition for enforcement of its order.
We further hold, however, that the trial court erred in ordering "the Board to reopen the hearing on the decertification petition and direct an election by secret ballot or use any other suitable method to determine whether and by which employee organization the employees desire to be represented and certify the results thereof." The applicable provisions of General Statutes 31-109
(a) permit the trial court "to make and enter a decree enforcing, modifying and enforcing as so modified, or setting aside in whole or in part, the order of the board." Only where it appears as a matter of law that there was but a single conclusion that an administrative agency could reasonably reach, may the court direct it to do or refrain from doing what the conclusion legally requires. Feinson v. Conservation Commission,180 Conn. 421, 430, 429 A.2d 910 (1980); Thorne v. Zoning Commission, 178 Conn. 198, 206,423 A.2d 861 (1979); Watson v. Howard, 138 Conn. 464, 470,86 A.2d 67 (1952). In the absence of such a limited finding, the trial court, upon concluding that the action taken by the agency was illegal, arbitrary or in abuse of its discretion, should go no further than to sustain the appeal, or in this case, should only have denied the petition for enforcement of the board's order. "For the court to go further and direct what action should be taken by the administrative agency would be an impermissible judicial usurpation of the administrative functions. Guerriero v. Galasso,144 Conn. 600, 608, 136 A.2d 497 [1957]; Watson v. Howard, 138 Conn. 464, 469-70, 86 A.2d 67 [1952]." Arterburn Convalescent Home v. Committee on State Payments to Hospitals, 176 Conn. 82, 86,405 A.2d 48 (1978). *Page 347 
Because it does not appear as a matter of law that there is only one single conclusion that the Board could reasonably reach, a direct order to the board is legally unwarranted. Feinson v. Conservation Commission, supra.
 There is error in part, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.
In this opinion DALY and CIOFFI, Js., concurred.