LOCAL 1186 OF COUNCIL NO. 4, AFSCME, AFL-CIO
*v.* STATE BOARD OF LABOR RELATIONS ET AL.
(14502)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued October 27, 1992—decision released February 23, 1993

*E. Stephen Briggs,* with whom, on the brief, was *Seth Feigenbaum,* for the appellants (defendants).

*Barbara J. Collins,* for the appellee (plaintiff).

BERDON, J. The sole issue in this appeal is whether a board of education must negotiate with school employees over the secondary impact of a managerial decision to institute a smoke-free policy in the work place. We conclude that impact negotiation is required if implementation of the smoke-free policy has a substantial secondary impact on employee working conditions.

The relevant facts in this appeal may be summarized as follows. On September 28, 1987, the defendant New Britain board of education (school board) approved a new policy that prohibited smoking at all times both inside the New Britain public schools and outside on school property, effective July 1, 1988. On December 9, 1988, the plaintiff, Local 1186 of Council 4, American Federation of State, County and Municipal Employees, AFL-CIO (Local 1186), submitted a written formal request for negotiations regarding the smoke-free policy, claiming that the new policy constituted a "unilateral change in work conditions" and was a mandatory subject of bargaining. The school board denied the request for negotiations in a letter dated February 24, 1989.

Local 1186 filed a prohibited practice charge complaint[1] on March 7, 1989, to contest the school

---

[1] Local 1186 alleged that the school board had violated General Statutes §§ 7-468, 7-469 and 7-470 (c) of the Municipal Employee Relations Act (MERA). Section 7-468 provides in relevant part: "(a) Employees shall have

board's unilateral imposition of the smoke-free policy. After a hearing on October 18, 1989, the defendant state board of labor relations (labor board) issued a decision on March 28, 1990, dismissing the complaint. The labor board concluded that: (1) the decision to ban smoking on school property was "within management's prerogative to make unilaterally"; (2) the smoking ban did not involve a mandatory subject of bargaining;[2] and (3) the smoking ban "was part of an educational policy reserved to the discretion of the Board of Education in order to preserve an important educational policy interest."

Local 1186 appealed the labor board's decision to the Superior Court pursuant to General Statutes § 4-183. The Superior Court sustained the appeal and remanded the case to the labor board for further proceedings.[3]

---

. . . the right of self-organization . . . to bargain collectively through representatives of their own choosing on questions of wages, hours and other conditions of employment . . . ." Section 7-469 provides: "The municipal employer and such employee organization as has been designated as exclusive representative of employees in an appropriate unit, through appropriate officials or their representatives, shall have the duty to bargain collectively. This duty extends to the obligation to bargain collectively as set forth in subsection (c) of section 7-470." Section 7-470 (c) provides in relevant part: "[T]o bargain collectively is the performance of the mutual obligation of the municipal employer . . . and the representative of the employees to meet at reasonable times . . . and confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation shall not compel either party to agree to a proposal or require the making of a concession."

[2] Local 1186, in arguing before the labor board, claimed that the school board's decision to ban smoking was a mandatory subject of bargaining. Local 1186 raised the secondary impact argument, but it was not addressed by the labor board.

[3] "On appeal from the final order of an administrative agency, such as the [labor] board, the trial court does not try the case de novo. It is not the function of the court to adjudicate the facts. The court can do no more, on the factual questions presented, than to examine the record to determine whether the ultimate findings were supported . . . by substantial

The court held that although the smoke-free policy was not a mandatory subject of bargaining, the school board was nevertheless required to bargain over the secondary effects of the smoking ban on the conditions of employment. The school board and the labor board appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

On appeal, the parties agree that the school board's decision to implement the smoke-free policy was not a mandatory subject of bargaining because the decision concerned a matter of educational policy to be decided by the school board. The labor board, applying the balancing test developed in *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 581–83, 295 A.2d 526 (1972),[4] has firmly established that "a policy banning smoking by all persons within the school buildings is a managerial prerogative, as it deeply concerns a matter of educational policy fundamental to the existence, direction and operation of the enterprise. *New Haven* [v. *State Board of Labor Relations*, Labor Board Decision] No. 1490 (1977)." *Portland Board of Education* v. *State Board of Labor Relations*, Labor Board Decision No. 2001 (1981) p. 4; *Rocky Hill* v. *State Board of Labor Relations*, Labor Board Decision No. 2501 (1986); *Middletown* v. *State Board of Labor Relations*, Labor Board Decision No. 2581 (1987).

Local 1186 argues that even though the decision to ban smoking is a managerial decision, the school board

evidence. . . . If the findings are supported by substantial evidence, they cannot be disturbed." (Citation omitted.) *Norwich* v. *Norwich Fire Fighters*, 173 Conn. 210, 214, 377 A.2d 290 (1977).

[4] The test developed in *West Hartford Education Assn., Inc.* v. *DeCourcy*, 162 Conn. 566, 581–83, 295 A.2d 526 (1972), balances the degree to which an item affects conditions of employment against the degree to which an item affects managerial decision-making in order to determine whether the item is a mandatory subject of bargaining.

was still required to bargain over the substantial secondary effects of the smoking ban on employee working conditions. The school board and the labor board argue that secondary impact bargaining is not required in this case because General Statutes §§ 1-21b (b) (5) and 31-40q give local boards of education the power to ban smoking without bargaining over the decision or the impact of the decision.[5]

We begin our analysis by determining whether a school board can be required to bargain over the secondary impact of a managerial decision to implement a smoking ban. Because the Municipal Employee Relations Act (MERA); General Statutes §§ 7-460 through 7-479; and the Connecticut Labor Relations Act; General Statutes §§ 31-103 through 31-111b; are closely patterned after the National Labor Relations Act, the

---

[5] The school board and labor board also argue that impact bargaining is not required because it was not ordered in *Portland Board of Education* v. *State Board of Labor Relations,* Labor Board Decision No. 2001 (1981) p. 4. *Portland Board of Education* is not instructive, however, because the issue of secondary impact was never considered. In *Portland Board of Education,* the labor board considered whether the board of education had violated its duty to bargain in good faith by unilaterally imposing a smoke-free policy within school buildings. The labor board noted that "[t]his is an area where conditions of employment and educational policy overlap. The matter of possible impingement on conditions of employment of the teachers and overriding interest on the Respondent's part in educational objectives and use of buildings calls for balancing as was decided in *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 583, 295 A.2d 526 (1972), and applied in [*East Haven* v. *State Board of Labor Relations,* Labor Board Decision. No. 1279 (1975)], wherein we state that: In drawing the line within that area between those items that must be bargained over and those which the employer may act on without bargaining a balance must be struck. And in striking it the tribunal should consider, we believe, the directness and the depth of the item's impingement on conditions of employment, on the one hand, and, on the other hand, the extent of the employer's need for unilateral action without negotiation in order to serve or preserve an important policy decision committed by law to the employer's discretion." The labor board applied the *DeCourcy* test for the purpose of determining whether the smoking policy was a mandatory subject of bargaining, and determined that it was not. The decision went no further.

decisions of the United States Supreme Court are "of great assistance and persuasive force" in the interpretation of our own labor relations law. *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 579. In *First National Maintenance Corporation* v. *National Labor Relations Board,* 452 U.S. 666, 101 S. Ct. 2573, 69 L. Ed. 2d 318 (1981), the United States Supreme Court held that although the employer was not required to bargain with employees over its decision to close part of its business, it was nevertheless required to bargain about the *effects* of its managerial decision on employee working conditions. The court noted: "There is no doubt that petitioner was under a duty to bargain about the results or effects of its decision to stop the work at Greenpark, or that it violated that duty." Id., 677–78 n.15. Applying this same logic, the labor board held in *Rocky Hill* v. *State Board of Labor Relations,* supra, that although the town's decision to implement a smoking ban to protect computer equipment was within the realm of management's prerogative and was not a mandatory subject of bargaining, the town was required to bargain about the *impact* of the decision to prohibit smoking because it had a substantial impact on the conditions of employment.

Likewise, in *Beloit Education Assn.* v. *Wisconsin Employment Relations Commission,* 73 Wis. 2d 43, 64, 242 N.W.2d 231 (1976), the Wisconsin Supreme Court held that although decisions concerning class size were permissive, not mandatory, subjects of bargaining, the school board was nevertheless required to bargain about the *impact* of class size changes upon the working conditions of the teachers. See also *San Juan Teachers Assn.* v. *San Juan Unified School District,* 44 Cal. App. 3d 232, 248–49, 118 Cal. Rptr. 662 (1974) (school board required to bargain over secondary impact of decision to implement school counseling program upon teacher working conditions).

Even if a managerial decision affects employee working conditions, the impact is not bargainable *unless it is substantial.* "A condition of employment within the meaning of the MERA must have a material effect on the employment; a condition of employment does not include those matters which are only indirectly, incidentally or remotely related to employment. *Westinghouse Electric Corporation* v. *National Labor Relations Board,* 387 F.2d 542, 547 (4th Cir. [1967])." *New Haven* v. *State Board of Labor Relations,* 36 Conn. Sup. 18, 27, 410 A.2d 140 (1979). "The use of the phrase 'conditions of employment' reflects a judgment that the scope of negotiations should be relatively broad, but sufficiently flexible to accommodate the changing needs of the parties." *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 581–82.

The school board and the labor board argue, however, that even if the smoke-free policy has a substantial impact on employee working conditions, the plain language of General Statutes §§ 1-21b (b) (5) and 31-40q preclude impact bargaining in this case. We are not persuaded by the boards' argument.

In *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 264–65, 579 A.2d 505 (1990), we made it clear that the "the bargaining process and resulting agreements are subject to the restrictions and limitations of public policy as manifested in constitutions, statutes and applicable legal precedents." See *State College AAUP* v. *State Board of Labor Relations,* 197 Conn. 91, 98, 495 A.2d 1069 (1985).[6] Accordingly, if §§ 1-21b (b) (5) and 31-40q *mandate* that the school board ban

[6] Although we usually give great deference to the time tested construction given a statute by an agency charged with its enforcement; *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 263, 579 A.2d 505 (1990); we decline to afford that special deference in this case because the smoking statutes that formed the predicate for the labor board's decision are not limited to enforcement by the labor board. Accordingly, the con-

smoking, or if the statutes expressly prohibit bargaining, then the school board cannot be required to bargain about the secondary impact of the smoke-free policy. If, on the other hand, the statute merely gives the school board discretion to develop a smoking policy, this discretion is equivalent to the exercise of managerial prerogative and the school board may be required to bargain about the secondary impact of its smoking policy if the impact is substantial.

Section 1-21b (b) (5) provides in pertinent part: "No person shall smoke . . . (5) notwithstanding the provisions of section 31-40q, within a public school building while school is in session or student activities are being conducted, except that a local or regional board of education may designate one or more smoking areas for its employees and may permit smoking in rooms used for private functions . . . ." This court has often held that "when the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent." (Internal quotation marks omitted.) *Weinberg* v. *ARA Vending Co.*, 223 Conn. 336, 341, 612 A.2d 1203 (1992). In this case, the plain language of § 1-21b (b) (5) prohibits all persons from smoking within a public school building while school is in session or student activities are being conducted, unless the school board has exercised its discretion to allow smoking in designated smoking areas.

In their argument that § 1-21b (b) (5) gives the school board the unfettered right to prohibit smoking completely without bargaining about the decision or the effects of the decision, the school board and the labor board ignore the fact that the legislature specifically

struction and interpretation of the statutes is a question of law for this court to decide without the usual deference to the enforcing agency's interpretation. *State Medical Society* v. *Board of Examiners in Podiatry*, 208 Conn. 709, 718, 546 A.2d 830 (1988).

limited the scope of the statute by incorporating the restrictive phrase "within a public school building while school is in session or student activities are being conducted." Thus, that portion of the order that prohibits smoking outside the school building and when school is not in session and school activities have ceased, is outside the scope of § 1-21b (b) (5), and is clearly discretionary. Furthermore, although § 1-21b (b) (5) starts with the premise that smoking is prohibited inside the school building when school is in session or student activities are in session, it also affords a school board discretion to provide an employee smoking area. The statute cannot be classified as mandatory given this grant of discretion.

We next turn to General Statutes § 31-40q to determine whether it relieves the school board from bargaining about the secondary impact of the smoking ban. Section 31-40q (b) provides in relevant part: "Each employer shall establish one or more work areas, sufficient to accommodate nonsmokers who request to utilize such an area, within each business facility under his control, where smoking is prohibited . . . . Nothing in this section may be construed to prohibit an employer from designating an entire business facility as a nonsmoking area." Under the plain language of § 31-40q, a smoking policy is completely within an employer's discretion, with the sole requirement that an employer who allows smoking must provide smoke-free areas for nonsmokers. Although the statute gives an employer the authority to ban smoking entirely, nothing in § 31-40q can be construed to mandate an employer to ban smoking or to prevent bargaining over the secondary impact of a smoke-free policy.

In sum, the school board may be required to bargain about the secondary impact of its decision to ban smoking for the following aspects of its order that are discretionary: (1) prohibiting smoking outside the school

building; (2) prohibiting smoking inside the school building when classes are not in session and student activities have ceased; and (3) failing to provide, or providing an inadequate smoking area inside the school building when school is in session or student activities are being conducted. Such bargaining may not be required, however, unless the secondary impact is substantial.

We conclude that if a school board's decision to ban smoking has a substantial impact on employee working conditions, the school board is required to bargain over the substantial secondary impact of its decision on employee working conditions. Whether a smoking ban has such an impact in any given case, so as to require impact bargaining, is a factual matter that must be decided on a case-by-case basis and is, in the first instance, a question for the labor board. In the present case, the labor board did not address the claim of Local 1186 that the smoking ban had substantial secondary effects on conditions of employment so as to require negotiation.

The case is remanded to the trial court with direction to remand the case to the state board of labor relations to determine whether the smoking ban has a substantial secondary impact on conditions of employment so as to require impact bargaining.

In this opinion the other justices concurred.