[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff union appeals a decision of the state board of labor relations dismissing the union's complaint against the defendant department of correction. The board conducted a hearing on the complaint and ultimately dismissed it, acting pursuant to General Statutes § 5-274. The union appeals to this court pursuant to § 4-183. The court finds the issues in favor of the defendants.
Certain essential facts are not in dispute. The union represents a group of correctional officers employed by the defendant department of correction. Certain of the employees have been trained by the department and qualified in the use of firearms; others have not been trained. Firearms are carried only by CT Page 9498 correctional officers assigned to duties, such as guard towers and perimeter patrols, that do not involve direct contact or interaction with prisoners. Duty assignments on a particular shift may vary because of illness and other absences and substitutions. Some of the officers on a given shift may not be qualified to carry firearms, therefore, and the number who are qualified may vary from shift to shift and from day to day.
In August 1992, the department commenced a new policy that would reduce the overall number of correctional officers that it would train and qualify in the use of firearms. The stated purposes of the policy were to make a uniform policy for training officers at all of the department's facilities and to reduce costs of operations. The new policy necessarily results in a smaller group of officers eligible for duty assignments that require carrying firearms and do not involve inmate contact. Such assignments are preferred by the correctional officers. The department did not negotiate with the union prior to announcing and implementing the new policy.
The union's complaint to the board was that the new policy has substantial secondary impacts on major terms and conditions of employment and, therefore, required bargaining prior to implementation. Specifically, the union claimed that the new policy has substantial impacts on employee safety, on the amount of overtime that would be available, and on the opportunity to be assigned to the more desirable assignments.
In its decision, the board held that there was insufficient evidence to support a finding that the new policy affected the safety of the correctional officers. The board noted that additional firearms-qualified officers had to be called in to help quell a riot at the Carl Robinson facility in March 1993, after implementation of the policy at that facility. It found that fact to be not persuasive, however. The board stated that there was no evidence that the need for reinforcements in that incident was related to the new policy.
Further with regard to the safety issue, the board CT Page 9499 noted that there is a firm departmental prohibition against correctional officers using or carrying firearms within a correctional facility; that is, where they might come in contact with the inmate population. Accordingly, the board reasoned that the new firearms policy would not have a significant impact on the safety of correctional officers already inside a facility, since they would not be armed and those who would be armed would be on the outside only. The board also found that there was insufficient evidence to conclude that any reduction in the number of firearms-qualified officers would have a negative impact on safety.
With regard to the alleged reduced opportunity for overtime, the board found that there was no substantial impact on terms and conditions of employment. It noted the evidence that the department recognizes its obligation to equalize overtime opportunities and that "there is `enough overtime to go around.'"
With regard to the alleged reduced opportunity for preferred duty assignments, those without inmate contact, the board observed that "working with prisoners is part of the job." The board held, therefore, that a reduced opportunity for "respite from the prisoners" does not constitute a substantial impact on the major terms and conditions of that job.
In its brief on appeal to this court, the union claims error in the board's findings and conclusions on its allegations regarding safety, overtime and preferred duty assignments, as summarized above. The union does not, however, set out any legal argument on the overtime issue, and for that reason, the court considers that issue abandoned. See Collins v. Goldberg, 28 Conn. App. 733,738 (1992).
There is no question that policy changes in the correction department that have substantial secondary impacts on major terms and conditions of employment must be negotiated with the union prior to implementation.Local 1186 v. Connecticut State Board of Labor Relations,224 Conn. 666 (1993). The issue before the court, therefore, is whether the board's decision that the department's policy change did not have such an impact CT Page 9500 must be reversed. As indicated in the above summary of the decision, the board based its conclusions with regard to the safety and duty assignment issues on its assessment of the evidence presented at the administrative hearing or the lack of such evidence.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(j) provides that "(t)he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51,57 — 58 (1991). Similarly, "(w)ith regard to questions of fact, it is (not) the function of the trial court. . . to retry the case or to substitute its judgement for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital ofSt. Raphael v. Commission on Hospitals Health Care,182 Conn. 314, 318 (1980).
The court has reviewed the entire record in this case, including especially the transcript of the administrative hearing. At that hearing, two witnesses testified: Michael S. Minney, a correctional officer and the president of Local 391; and Thomas White, deputy commissioner of the department of correction. Neither witness offered clear and unequivocal evidence that would support the union's claims concerning the new policy's impact on the safety of correctional officers in their employment. At best, Minney's testimony was that it was conceivable that there would be some shifts that would CT Page 9501 have fewer arms-qualified officers, but he did not have any hard data to support that belief. Minney also could not state convincingly that there would be an insufficient number of qualified officers to respond to emergencies or to fill the assignments requiring firearms. The board was entitled to give his testimony little weight on the safety issue, and the court may not disturb its conclusions in that regard.
Minney did testify unequivocally that officers preferred assignments with no inmate contact and that officers who were qualified to carry firearms were eligible for such assignments. To the extent that the number of qualified officers is reduced by the new policy, therefore, the policy has the effect of reducing the opportunities for the preferred assignments. The board determined, however, that that consequence of the policy does not constitute a negative impact on major terms and conditions of the employment. It reasoned that the terms and conditions of the employment assume contact with prison inmates and, therefore, reducing the opportunity for assignments lacking such contact is not a valid basis for complaint.
As indicated above, the court may not "retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotations marks omitted.) Board of Education v. Freedomof Information Commission, 208 Conn. 442, 452 (1988). The union has not cited any statutory or case law authority in opposition to the board's decision concerning assignments that avoid inmate contact. Nor has the union advanced a compelling argument to counter the board's reasoning. The parties agree that the correctional officers' work is inherently dangerous and that the stress caused by working in close proximity to the inmate population is enormous. But the board reasoned that the terms and conditions of the officers' employment include the expectation that they will perform that dangerous and stressful work. It would follow, therefore, that a policy that reduces the avoidance of such work does not have an adverse impact on the essential terms CT Page 9502 and conditions of the job. In light of the evidence in the record, the board's findings and conclusions cannot be said to be unreasonable or an abuse of discretion. Accordingly, the court cannot substitute its judgment for that of the board.
The appeal is dismissed.
MALONEY, J.