[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The City of Hartford ("the City") appeals from a December 17, 1998 decision of the defendant, Connecticut State Board of Labor Relations ("the Labor Board") ordering reinstatement of a City employee, Walter Remes, to his position in the City Treasurer's office. The City's appeal is brought pursuant to General Statutes §§ 4-183 of the Uniform Administrative Procedure Act, 7-471 and 31-109. CT Page 3829
The Labor Board made findings of fact in its decision that may be summarized as follows:
1. Remes was hired by the City as a "Principal Administrative Analyst" in the investment unit of the treasurer's office in May, 1987. This was a bargaining unit position.
2. The investment unit was comprised of one Henry Yancovich and Remes, who assisted him. Remes' duties included reviewing the performance of outside investment managers, monitoring their compliance with commission agreements and city policies, review of proxy statements, acting as liaison with custodian banks and SEI (an investment performance review organization), preparing draft agendas and minutes for the Pension Commission, reconciling reports, receipts and payments, handling solicitations from potential vendors and conducting some dealings with the City's Director of Finance.
3. Yancovich retired in December 1993, and Remes went out on an extended medical leave the same month.
4. While Remes was on medical leave, the City hired Chris Rowlins in a temporary, non-bargaining unit capacity to cover Remes' absence. Subsequently, the City assigned substantially more of the work with which Remes had been assisting to SEL.
5. When Remes returned to work in March 1994, he was informed by the City Treasurer that Rowlins and SEI would have primary responsibility for the investment unit's day-to-day work and that Remes would be assigned to work on special projects. He would report directly to the City Treasurer.
6. Remes assisted Rowlins in Rowlins' performance of the duties Remes had formerly performed. Rowlins had assumed all of the duties Remes formerly performed with the exception of portfolio review work which had been contracted out to SEI.
7. When Remes asked the City Treasurer about his status in April 1995, he was told that Rowlins was in a temporary position and that he would be leaving. Eventually, in March 1996, Rowlins was permanently hired to fill a "new" investment analyst position.
8. In April 1995, the City hired Philip Lawton to head the investment unit. He was hired as an investment analyst and later became principal investment officer.
CT Page 3830
9. The City eliminated Remes' position effective June 30, 1995.
10. At the time, the position in the investment unit (Investment Analyst) which would later be given to Rowlins had not yet been posted; it was not posted until November 30, 1995. According to the City Treasurer, this job was available to Remes even though it had not been posted, since it was the City's practice to make jobs available to displaced employees prior to the actual posting.
11. On June 7, 1995, Remes bumped into the pension unit of the City Treasurer's office as a Principal Administrative Analyst without reduction in pay or benefits.
12. After this transfer, Remes applied for the new Investment Analyst job but was not awarded it on the basis of a "subjective test." He did pass the examination for Principal Administrative Officer, but the job was given, as indicated, to Lawton.
13. On July 17, 1995, the Union filed its complaint to the Labor Board to protest the transfer of Remes' work outside the bargaining unit.
14. After about six months on the job in the pension unit, Remes was terminated effective December 29, 1995 for inefficiency and inability to perform the duties of the job.
15. The Union filed a grievance regarding his termination on Remes' behalf on December 8, 1995, which was pursued through Step 3 of the grievance procedure, but not to arbitration.
16. The City conceded that the Investment Analyst position now held by Rowlins would be a bargaining unit position.
(Return of Record, ("ROR"), Item 12 (Decision), pp. 2-3.)
Based upon these findings of fact, the Labor Board concluded that the City had committed an unlawful refusal to bargain and a prohibited practice when it transferred Remes' work to non-bargaining unit personnel. It ordered Remes to be restored to his duties at the time of his medical leave of absence in December, 1993. This appeal followed.[1]
The court reviews the issues raised by the City in accordance with the limited scope of judicial review afforded by the Uniform Administrative Procedure Act ("UAPA"). Dolgner v. Alander, 237 Conn. 272, 280 (1996). As the court stated in Domestic Violence Services of Greater New Haven,Inc. v. Freedom of Information Commission, 47 Conn. App. 466, 469-70
(1998): CT Page 3831
 The scope of permissible review is governed by § 4-183(j) and is very restricted. . . . [T]he trial court may [not] retry the case or substitute its own judgment for that of the defendant. . . . The conclusion reached by the defendant must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its orders, acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . (Citations and internal quotation marks omitted.)
See also State Board of Labor Relations v. South Windsor,39 Conn. Sup. 338, 345 (1983).
The City claimed at oral argument to be presenting an issue that Remes did not change his job classification when he moved to the pension unit of the City Treasurer's office in June 1995, and was therefore not entitled to the reinstatement order. This issue was not alleged in the complaint or briefed by the City and the court deems it abandoned.Bridgeport Hospital v. Commission on Human Rights Opportunities,232 Conn. 91, 115 (1995) (issue mentioned, but not briefed, deemed waived.); Collins v. Goldberg, 28 Conn. App. 733, 738 (1992); Kopacz v.Commission on Human Rights and Opportunities, Superior Court, judicial district of New Britain, Docket No. 494394 (September 28, 1999, Cohn, J.). In any event, there is substantial evidence to support the Labor Board's conclusion that the tasks being performed by Remes in the investment unit of the City Treasurer's office were different in kind from his duties in the pension unit. (ROR, Item 12, Finding of Fact, ¶¶ 5, 17; Item 5, Exhibits 2, 3.) The Labor Board must look to the actual situation of the employee's duties, not just job titles.
The City concedes that the Labor Board correctly concluded that the City erred in the unilateral transfer of bargaining unit work to a non-bargaining unit employee. (Plaintiff's Brief, p. 17.) It challenges the Labor Board on the remedy of reinstatement to the position and duties held prior to his transfer to the pension unit and prior to his medical leave. First, since the Union did not take Remes unsuccessful grievance to arbitration, the City argues that the Labor Board was bound by collateral estoppel and could not make a reinstatement order. CT Page 3832
The City is wrong, however, in trying to import the doctrine of collateral estoppel into the remedy phase of the Labor Board's determination. Collateral estoppel "prevents a party from relitigating an issue that has been determined in a prior suit. . . ." (Citations omitted; internal quotation marks omitted.) Virgo v. Lyons, 209 Conn. 497,501 (1988). The issue must have been "fully and fairly litigated in the first action." Id.
Having already conceded that it erred in transferring bargaining unit work, the City cannot bind the Labor Board in its decision on remedies to the separate grievance proceeding. The step 3 hearing officer had no jurisdiction to consider whether reinstatement of Remes would effectuate the policies of the Act; only the Labor Board is empowered by the Act to make such a determination. See Local 1219, IAFF v. Connecticut LaborRelations Board, 171 Conn. 342, 355 (1976): "It is unquestioned that the submission to the arbitrator was restricted to an interpretation of the contract involving the parity clause without regard to the law and it is also unquestioned that the issue before the [Labor Board] was limited to whether there was a statutory violation; therefore, each board operated in its own field. The interpretation given the contract remains; its enforcement, however, would constitute an unfair labor practice. The defendant board has the authority to determine whether practices prohibited by the act have been, or are being, committed. . . ." (Citations omitted.)
Nor is the City of New London, Decision No. 2443 (1985) of any assistance to the City. Under City of New London, the Labor Board may not consider complaints where there has been a full and fair use of the grievance process. That analysis is inapplicable because the issue being litigated in the grievance proceeding was Remes' termination from City service, not the transfer of work. The Labor Board was therefore not bound by the step 3 decision in making its own statutorily-based order of reinstatement.
The grievance in step 3 concluded that "[t]he evidence . . . indicated that problems [with Remes] arose before [the July 1995] transfer." (ROR, Item 8, Exhibit 18.) The City argues that the Labor Board was bound by this conclusion in its remedy phase. The Labor Board acted pursuant to General Statutes § 7-471 (5) in devising a remedy and its actions are entitled to deference. As the Court stated in Board of Education v.Connecticut State Board of Labor Relations, 190 Conn. 235, 241 (1983):
 Since the act is a labor relations statute, it is a remedial enactment and as such should be liberally construed to accomplish its objectives. . . . In this CT Page 3833 regard, it is also well established that courts should accord great deference to the construction given the statute by the agency charged with its enforcement. . . .
(Citations omitted; internal quotation marks omitted.)
The Labor Board concluded, (ROR, Item 12, p. 6), that Remes' termination resulted initially from the admittedly illegal transfer of his duties, setting in a sequence of events that led to his move to the pension unit and later his termination. Because collateral estoppel is, as found above, not applicable here, the City would have had to develop at the hearing before the Labor Board that Remes was failing at a time prior to his duties being transferred. There is substantial evidence to support the Labor Board in concluding that Remes was performing his investment unit duties properly. The City Treasurer in 1995 urged Remes to take the re-organized position. (ROR, Item 10, p. 260.) The City failed to introduce any evidence to support its contentions that Remes was deficient in the investment analyst position.[2]
The Labor Board had the authority to order Remes reinstated and made whole for Lost wages and benefits. Board of Education v. State Board ofLabor Relations, 217 Conn. 110, 130 (1991). Therefore, the City's appeal is dismissed.
Henry S. Cohn, Judge