[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal brought by the plaintiff, the New Haven Police Union (union), pursuant to General Statutes §§ 4-183, 7-471
and 31-109[1] from a decision by the defendant, Connecticut State Board of Labor Relations (labor board), dismissing the plaintiff's consolidated complaints against the defendant, the City of New Haven (city). The grounds for this appeal are the union's claim that it was denied its rights under the due process clause and its right to present evidence and conduct cross-examination under § 4-177c (a)(2) of the UAPA. Specifically, at issue is whether the labor board denied the union the opportunity for a full and fair hearing in violation of due process by: (1) admitting into evidence the affidavit of an attorney, who had represented the defendant, the city in an underlying action against the city and four union members; and (2) by unfairly limiting the union's presentation of its case.
 I PROCEDURAL HISTORY
The following facts and procedural history are not in dispute. The union's claims before the labor board arose from the settlement of two separate civil lawsuits brought against the city and certain individually named bargaining unit members. In the first case (Case No. MPP-19, 222) a corporation named TARP, Inc. had filed a complaint for declaratory and CT Page 17200 injunctive relief against, inter alia, the city and bargaining unit member Charles Lemons for allegedly unlawfully shutting down a nightclub. (ROR, Item 25, p. 4.) In accordance with the applicable indemnification statute, the city provided private counsel for Lemons. The parties eventually settled the lawsuit for $25,000. Lemons agreed to pay $5,200 towards the cost of the settlement, payable in weekly installments deducted from his paycheck. (ROR, Item 25, p. 4.)
In the second case (Case No. MPP-19, 417) a citizen named Roman Deneka filed a lawsuit against, inter alia, bargaining unit members Domingo Paul, Lisa Wexler, John Burke and Kevin Emery, alleging that the manner in which they had effected Deneka's arrest had violated his civil rights pursuant to 42 U.S.C. § 1983. (ROR, Item 25, p. 3.) Each of the individually named defendants was provided with counsel retained by the city. The parties ultimately settled the case, and as a condition of the settlement the defendants Paul and Wexler agreed to monetary settlement contributions to be deducted weekly from their pay. (ROR, Item 25, p. 4.) In addition Emery agreed to withdraw a pending grievance from arbitration.[2] (ROR, Item 25, p. 4.)
On July 3, 1997, the union filed the first complaint (Case No. MPP-19, 222) with the labor board, alleging that the city had violated General Statutes § 7-470 (a)(1), (2) and (4) of the Municipal Employee Relations Act (MERA),[3] by dealing directly with Lemons and attempting to coerce him into accepting a settlement. (ROR, Item 1.) On September 30, 1997, the union filed a second complaint (Case No. MPP-19, 417), making essentially the same allegations with regard to four other bargaining unit members. (ROR, Item 2.)
On December 16, 1997, the union amended both of its complaints to include allegations that the city violated MERA by unilaterally imposing a requirement that bargaining unit members contribute towards the settlement of lawsuits in which they were codefendants with the city. (ROR, Items 3, 4.) The two complaints were consolidated on April 6, 1998, and came before the labor board for a hearing on June 18, 1998. (ROR, Item 5.) At the hearing, the city filed a motion to dismiss the complaints for lack of jurisdiction with supporting documentation. (ROR, Item 6.) In support of its motion, the city submitted documentation, which was entered for identification only, including a sworn affidavit by Attorney Martin Echter (Echter affidavit), who had represented the city in the TARP and Deneka lawsuits. (ROR, Item 6, Exhibit 2D.) The parties further agreed to a briefing schedule to allow the union an opportunity to object to the city's motion to dismiss and to the admissibility of the supporting documentation. (ROR, Item 6, pp. 26-28.)
The union filed its objection to the city's motion to dismiss on August CT Page 17201 6, 1998, and also objected therein to certain of the city's exhibits. (ROR, Item 8.) On August 7, 1998, the city filed a brief in support of its motion. (ROR, Item 9.) The union filed a reply on September 18, 1998. (ROR, Item 11.) After several postponements and a continuance, the parties again appeared before the labor board on December 10, 1999.
At the December 10 hearing, the labor board heard oral argument on the city's motion to dismiss, and ultimately denied the motion on the record. (ROR, Item 17, pp. 89-90.) The labor board then related its belief that "essentially this is a case of legal argument" of whether lawsuit settlement contributions were mandatory subjects of bargaining. (ROR, Item 17, p. 90.) The labor board claims that the union also admitted that the case involved purely legal argument. (ROR, Item 17, p. 98.) The labor board then asked the parties what additional facts needed to be presented. (ROR, Item 17, p. 91.) In response to the board's query, the union described the testimony it had planned to present. (ROR, Item 17, pp. 91-95.) The labor board contends that the union then admitted that its allegations of coercion were not relevant to its claim of unilateral change; (ROR, Item 17, p. 97); and that the union further admitted that the relevant facts with regard to the alleged unilateral change were not in dispute. (ROR, Item 17, p. 98.) The union requested a stipulation that there had been no prior instances where the city had made employee contributions a condition of settling a lawsuit. (ROR, Item 17, p. 98.) However, the city refused to so stipulate.
The labor board entered the documents submitted by the city for identification, including the Echter affidavidit, into the record as full exhibits. (ROR, Item 17, p. 102-03.) The union objected to the admissibility of the documents, stating the following:
 Attorney Murray: What I would like to do, because I'm hearing that this is how we're going to proceed is just to be on the record, Mr. Sauter, [it] is in my brief you know that I objected to a number of the City's exhibits being admitted. It's found on page 10 of my original memorandum. I'm going to address why I objected to those in my brief, but just to be on the record I would like you to formally overrule my objections to that on the record.
 Chairman Sauter: Okay. Fine. Very well. We will receive those over your objections. And you certainly have a right to CT Page 17202 argue that that was inappropriately decided.
(ROR, Item 17, 104-05.)
In its posthearing brief of March 29, 2000, the union argued that requiring a bargaining unit member to contribute towards the settlement of a lawsuit is a mandatory subject of bargaining. The union also argued that the city had unilaterally modified a past practice of not requiring settlement contributions from officers. Lastly, the union made reference in its brief to the allegations of direct dealing.
In its posthearing brief of March 25, 2000, the labor board argued that the parties were provided an opportunity to present evidence and testimony on the merits of the complaints and that the parties and the labor board ultimately agreed that the complaints presented purely legal issues. Further, the labor board contended that at no time on the record did the union object to not presenting witnesses or additional evidence in support of its case on the merits, and that the union did not object to the labor board's plan to limit its consideration of the case to the issue of whether lawsuit contributions were a mandatory subject of bargaining. Finally, the labor board argued that the union "conceded in its brief that decisions made by the municipality as to how to defend itself and its employee, whether both would be represented by the same attorney, whether it will proceed to trial or settle the case, and the amount that it, (emphasis supplied) the municipality, will be willing to pay if it does settle, would involve managerial prerogatives." (Brief of the Defendant, Connecticut Board of Labor Relations, pp. 7-8.)
On August 25, 2000, the labor board issued Decision No. 3788, dismissing both of the union's complaints. (ROR, Item 25.) Specifically, the labor board concluded that the city's decision to settle lawsuits and to request individual codefendants to contribute towards the cost of the settlements constituted a permissive subject of bargaining and did not require prior negotiations with the union. (ROR, Item 25, pp. 6-9.) Further, the labor board concluded that the city did not commit a prohibited practice under MERA when it unilaterally required individual bargaining unit members to contribute towards the settlements of lawsuits in which they were codefendants with the city. (ROR, Item 25, pp. 8-9.) This appeal followed.
 II JURISDICTION
General Statutes § 4-183 (a) provides that "[a] person who has CT Page 17203 exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section." Thus, the party appealing the agency's decision must show both aggrievement and exhaustion of administrative remedies.
"The fundamental test for establishing classical aggrievement is well settled: [F]irst, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision. . . . Second, the party claiming aggrievement also must demonstrate that its asserted interest has been specially and injuriously affected in a way that is cognizable by law." (Citations omitted; internal quotation marks omitted.) King v. Sultar, 253 Conn. 429,434-35, 754 A.2d 782 (2000). Since the union claims that the labor board's alleged denial of due process to the union resulted in a decision that adversely affected its members, the union has satisfied both prongs of the aggrievement test.
In its brief, the labor board claims that the union did not pursue available administrative remedies. "It is a settled principle of administrative law that if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) Housing Authorityv. Papandrea, 222 Conn. 414, 420, 610, A.2d 637 (1992); see also Cannatav. Department of Environmental Protection, 215 Conn. 616, 622,577 A.2d 1017 (1990); Connecticut Life Health Ins. Guaranty Assn. v.Jackson, 173 Conn. 352, 358-59, 377 A.2d 1099 (1977). "We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." Norwich v. Lebanon, 200 Conn. 697, 708,513 A.2d 77 (1986); Cannata v. Department of Environmental Protection,
supra, 215 Conn. 623. "[B]ecause the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff[s'] claim." (Internal quotation marks omitted.) Housing Authority v. Papandrea, supra,222 Conn. 420; see also Concerned Citizens of Sterling v. Sterling,204 Conn. 551, 556, 529 A.2d 666 (1987). "The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions." (Internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities Service Co.,254 Conn. 1, 12, 756 A.2d 262 (2000).
The labor board raises two administrative remedies that the union could have pursued before bringing this appeal. The first, that the union has not moved the labor board to reconsider its decision pursuant to General CT Page 17204 Statutes § 4-181, is irrelevant to the exhaustion requirement. "The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal." General Statutes § 4-183 (a). The labor board also suggests that the union should have filed a motion to reopen the hearing pursuant to § 7-471-65 of the Regulations of Connecticut State Agencies. That section, however, allows a party to make a motion to reopen a hearing because of newly discovered evidence. None of the parties has alleged the existence of any newly discovered evidence, so a motion to reopen the hearing pursuant to § 7-471-65 is unavailable to the union as an administrative remedy. The court finds, therefore, that the union has satisfied the exhaustion requirement.
 III STANDARD OF REVIEW
The appropriate scope of judicial review for an appeal of an administrative agency decision is set forth in General Statutes § 4-183
(j) of the Uniform Administrative Procedure Act (UAPA):
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion.
Pursuant to this standard, the court is required to "determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) Dolgnerv. Alander, 237 Conn. 272, 280, 676 A.2d 865 (1996). Substantial evidence has been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . ." (Citations omitted; internal quotation marks omitted.) Calderock Properties Joint Venture, L.P. v.CT Page 17205Commissioner of Environmental Protection, 253 Conn. 661, 677, 757 A.2d 1
(2000), cert. denied, 531 U.S. 1148, 121 S.Ct. 1089, 148 L.Ed.2d 963
(2001). "Moreover, the board may use its experience and specialized knowledge in the evaluation of the evidence." (Internal quotation marks omitted.) Success Village Apartments, Inc. v. Local 376, 175 Conn. 165,170, 397 A.2d 85 (1978).
Even as to questions of law, the court's review is limited to a determination of whether the labor board acted arbitrarily, unreasonably, contrary to law or in abuse of its discretion. MacDermid,Inc. v. Dept. of Environmental Protection, 257 Conn. 128, 137, 778 A.2d 7
(2001); State Board of Labor Relations v. South Windsor, 39 Conn. Sup. 338,346, 464 A.2d 860 (1983). "Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically flow from such facts." New Haven v.Freedom of Information Commission, 205 Conn. 767, 774, 535 A.2d 1297
(1988). In addition, "[w]here an agency has expertise in a given area and a history of determining factual and legal questions similar to those at issue, its interpretation is granted deference by the courts." PlasticDistributors, Inc. v. Burns, 5 Conn. App. 219, 229, 497 A.2d 1005 (1985).
 IV DISCUSSION
The primary claim in this appeal is that the labor board denied the union the opportunity for a full and fair hearing in violation of due process. The union asserts that the labor board improperly accepted the affidavit of Attorney Martin Echter into evidence without allowing the union an opportunity to cross-examine Echter on the statements contained therein. In addition, the union claims that its witnesses were not "allowed" to testify at the hearing. The labor board counters that the union waived any rights it may have had in this regard by failing to object at the hearing and by failing to move to correct any such alleged deficiencies. The court finds that the labor board did not provide the union with a full opportunity to be heard on its complaints and that the union is substantially prejudiced by procedural irregularities and evidentiary rulings.
 A The Echter Affidavit
"The fundamental requisite of due process of law is the opportunity to be heard. . . . The hearing must be at a meaningful time and in a CT Page 17206 meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally. These rights are important in cases . . . where [a party has] challenged [the administrative determination] as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases." (Citations omitted; internal quotation marks omitted.) Giaimo v. New Haven, 257 Conn. 481, 512, 778 A.2d 33 (2001).
"Hearings before administrative agencies . . . although informal and conducted without regard to the strict rules of evidence, must be conducted so as not to violate the fundamental rules of natural justice. . . . Due process of law requires not only that there be due notice of the hearing but that at the hearing the parties involved have a right to produce relevant evidence, and an opportunity to know the facts on which the agency is asked to act, to cross-examine witnesses and to offer rebuttal evidence." (Citations omitted; internal quotation marks omitted.) Giaimo v. New Haven, supra, 257 Conn. 512-13; see also Bryan v. Sheraton-Hartford Hotel, 62 Conn. App. 733,740, 774 A.2d 1009 (2001); Bailey v. State,65 Conn. App. 592, 604, 783 A.2d 491 (2001).
In addition to the constitutional guarantee, parties have a right to cross-examination under both the UAPA and the regulations governing the labor board. Pursuant to General Statutes § 4-177c (a)(2) of the UAPA, "[i]n a contested case, each party . . . shall be afforded the opportunity . . . at a hearing, to respond, to cross-examine other parties, intervenors, and witnesses, and to present evidence and argument on all issues involved." Further, under General Statutes § 4-178
(5), "[i]n contested cases . . . a party and such agency may conduct cross-examinations required for a full and true disclosure of the facts." In addition, pursuant to § 7-471-56 of the Regulations of Connecticut State Agencies, "[i]n any hearing [before the labor board], the agent and all parties shall have the right to call, examine and cross-examine witnesses and to introduce into the record papers and documents or other evidence subject to the ruling of the Board."
The right of cross-examination, however, "has always been understood as requiring, not necessarily an actual cross-examination, but merely an opportunity to exercise the right to cross-examine if desired." Welch v.Zoning Board of Appeals of the Town of North Branford, 158 Conn. 208,213, 257 A.2d 795 (1969) (holding that admission into the record of a letter which opposed the plaintiffs' application to the zoning board of appeals did not deprive plaintiffs of due process where the chairman inquired, after reading the letter into the record, whether "any one wished to speak"); see also Cole v. Planning Zoning Commission,
CT Page 1720740 Conn. App. 501, 509, 671 A.2d 844 (1996) (finding no violation of plaintiffs' due process rights where the commission considered evidence obtained outside the public hearings, but plaintiffs had full opportunity to cross-examine). Further, "[t]o establish a violation of the right to cross-examination, a party who has been deprived of its opportunity to conduct a full and complete cross-examination must additionally show that such deprivation has caused substantial prejudice." Ann Howard's ApricotsRestaurant v. Commission on Human Rights and Opportunities, 237 Conn. 209,230-31, 676 A.2d 844 (1996).
In this case, as opposed to Welch and Cole, the union did not have a full opportunity to cross-examine. As noted in Part I of this opinion, the labor board admitted the Echter affidavit as a full exhibit at the hearing on December 10, 1999. (ROR, Item 6, pp. 8-9, Item 17, pp. 102-03.) Earlier, the union objected to the admittance of the Echter affidavit on the ground that Echter was present at the hearing, available to testify, "so that would be the best evidence." (ROR, Item 17, pp. 55-56.) Additionally, the union objected on the ground that Echter was both attorney and witness in the case. (ROR, Item 17, p. 56.) Instead of ruling on the union's objections, the board suggested first permitting the city to make its arguments. (ROR, Item 17, p. 57.) The board would then "go from there." (ROR, Item 17, p. 57.) The board did not, however, at any point in the hearing return to the issue raised by the union, that it was improper to accept the affidavit in evidence since Echter was present and available to testify. Instead, at the conclusion of oral argument on the city's motion to dismiss, the labor board first denied the city's motion, (ROR, Item 17, pp. 89) then, Chairman Sauter stated: "Our questions, our concerns, however, go to the merits. And it seems to us that we've heard — we've heard enough so that essentially, this is a case of legal argument." (ROR, Item 17, pp. 89-90.) In effect, Chairman Sauter's statement precluded the union from cross-examining Echter by informing the parties that the labor board considered the case to involve only issues of law. Later in the hearing, the board admitted all of the city's exhibits, including the Echter affidavit, as full exhibits. (ROR, Item 17, p. 102.) The labor board then relied on Echter's representations in its own findings of fact. (ROR, Item 25, ¶¶ 8, 9, 10, 14 and 16.) In effect, the labor board accepted his "written testimony" without question.
Moreover, it is obvious from the labor board's findings and conclusions that the union was substantially prejudiced by its inability to cross-examine Echter. Echter averred in his affidavit that it was not a past practice of the city to indemnify its police officers "in all instances and in all lawsuits." (ROR, Item 6, Exhibit 2D, p. 2.) Instead, he claimed, the city made such decisions on a "case-by-case basis." (ROR, Item 6, Exhibit 2D, p. 4.) The labor board's factual CT Page 17208 finding that the city did indeed make such determinations on a case-by-case basis was essential to its decision. (ROR, Item 25, p. 3.)
The labor board argues that the union waived its right to cross-examination. "Waiver is the intentional relinquishment of a known right." Ann Howard's Apricots Restaurant v. Commission on Human Rightsand Opportunities, supra, 237 Conn. 222 n. 9. "While the issue of the waiver depends upon questions of fact . . . the ultimate determination of whether a party has waived a right is a question of law." Id. The labor board relies primarily on Dragan v. Connecticut Medical Examining Board,223 Conn. 618, 613 A.2d 739 (1992). In Dragan, the Supreme Court found that "[b]ecause the plaintiff never asserted during the course of the license revocation proceeding that his right to cross-examine [the witness] had been violated and because he failed to utilize available administrative remedies to cure any alleged defect, we conclude that the plaintiff waived his right to cross-examine [the witness]." Id., 632. The labor board contends that the union in the present case likewise failed to request cross-examination of Echter before the labor board. This case, however, is distinguishable from Dragan, which involved a witness who had already testified on direct. The plaintiff in Dragan reserved the right to cross-examine the witness, but did not subsequently exercise the right. In this case, the union objected to the admission of the Echter affidavit precisely because Echter was available to testify, but its objection was never addressed by the board, which later made clear to the parties that it would not hear any further evidence. (ROR, Item 17, pp. 89-90.) Given the facts of this case, the court finds that the union did not waive its right to cross-examination. Therefore, the court finds that the labor board's decision to allow the Echter affidavit into evidence over the union's objection deprived the union of the right to cross-examination in violation of the union's right to due process and in violation of § 4-177c (a)(2) of the UAPA.
Because the court has already found that the Echter affidavit was improperly admitted, it is unnecessary to determine the issue of whether the labor board admitted the affidavit in violation of § 3.7 of the Rules of Professional Conduct, which contains a general prohibition against an attorney acting as a witness.[4] Indeed, based on the administrative record, it is difficult to determine the level and nature of Attorney Echter's involvement in the case. The court does note with concern, however, that despite the union's objection to the Echter affidavit on the ground that Echter was acting both as advocate and witness (ROR, Item 17, pp. 56, 75.), the labor board made no effort to clarify the extent and nature of Attorney Echter's involvement in the case prior to admitting his affidavit as a full exhibit.
 B CT Page 17209 Limitations on the Union's Presentation of its Case
The union claims that by not allowing union witnesses to testify at the December 10, 1999 hearing, the labor board denied it a full and fair hearing. The court agrees. The issue before the board was whether the city's decision to require the individual officers to contribute as a condition to settlement constituted a unilateral change of a past practice and therefore was a subject to the duty to negotiate. In general, "[t]he duty to negotiate is limited to mandatory subjects of bargaining. As to other matters, however, each party is free to bargain or not to bargain." West Hartford Education Assn., Inc. v. DeCourcy,162 Conn. 566, 577, 295 A.2d 526 (1972). Traditionally, matters that are not terms and/or conditions of employment are permissive, not mandatory, subjects of bargaining. A policy change, however, which has a substantial secondary impact on major terms and conditions of employment is subject to the duty to negotiate and an employer may not unilaterally make such a policy change. Local 1186 of Council Number 4 v. State Board of LaborRelations, 224 Conn. 666, 672-73, 620 A.2d 766 (1993). Under such circumstances, the board is required to perform the balancing test established in West Hartford Education Assn., Inc. v. DeCourcy, supra,162 Conn. 584-85. "The test . . . balances the degree to which an item affects conditions of employment against the degree to which an item affects managerial decision-making." Local 1186 of Council Number 4 v.State Board of Labor Relations, supra, 224 Conn. 669 n. 4. In the course of performing this test, "it is appropriate to look to industrial practices in appraising the propriety of including a particular subject within the scope of mandatory bargaining. . . . Industrial experience is not only reflective of the interests of labor and management in the subject matter but it is also indicative of the amenability of such subjects to the collective bargaining process." (Internal quotation marks omitted.) West Hartford Education Assn., Inc. v. DeCourcy, supra,162 Conn. 584.
The labor board informed the union at the December 10, 1999, hearing that testimony would not be helpful in deciding the case. (ROR, Item 17, pp. 91-102.) Yet, in its decision, the board found that "[t]he only impact alleged by the union in this case is the asserted impact on employee wages. . . ." (ROR, Item 25, p. 7.) Since the union clearly indicated at the December 10, 1999 hearing that its proposed witnesses would testify concerning both the city's past practice of not requiring an individual officer to contribute as a condition to settlement and concerning the impact of the city's change of policy, the board's conclusion is premature. The union was not given the opportunity, despite its assertion of its right to do so, to present evidence before the board as to the city's past practices and as to the impact of the city's unilateral CT Page 17210 decision. Until the board has heard the union's proposed evidence, it lacks the necessary information to perform the DeCourcy balancing test. Therefore, the board's decision to exclude the union's evidence constituted an abuse of discretion and denied the union of a full and fair hearing in violation of the union's right to due process and in violation of § 4-177c (a)(2) the UAPA.
 V CONCLUSION
The union has established that the labor board acted unreasonably, arbitrarily, illegally and abused its discretion by denying the union a full and fair hearing in violation of due process. The union also showed that this substantial right resulted in prejudice. The union appeal is sustained. The case is remanded to the labor board to hold a full evidentiary hearing on the merits of the union's complaints.
Angelo L. dos Santos Judge of the Superior Court